[Civ. No. 46064. First Dist., Div. Three. Nov. 29, 1979.]

Estate of LEWIS D. SCHLEY, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant, v.
FAY L. SCHLEY, Objector and Respondent.

COUNSEL

Myron Siedorf, Edwin Rosenthal, Patricia Streloff and John D. Schell for Petitioner and Appellant.

Duffy & Preston and Ronald K. Preston for Objector and Respondent.

OPINION

**WHITE, P. J.**—The question presented is whether a widow's pension benefits are subject to state inheritance tax.

Lewis D. Schley was vice president and general manager of Pacific Fruit Express Company when he retired on December 31, 1973, with 47 years and 11 months of service credited towards his retirement benefits. Upon his retirement, the company approved a pension of $1,742.80 a month and also approved a widow's allowance of $871.40 a month for his wife, Fay Schley, effective with the death of Mr. Schley should he predecease her, such widow's allowance to continue during her life or until she remarried.

Mr. Schley died on May 17, 1976, and the company began making payments to respondent. The inheritance tax referee included the value

of the widow's allowance in the estate for inheritance tax purposes, valuing it $82,853. Half of this amount was excluded from tax as representing Mrs. Schley's community interest in the pension benefits; the other half was taxed as a transfer to her from the decedent.

Fay Schley filed objections to the report of the inheritance tax referee, contending that the widow's allowance was not subject to the tax. The trial court agreed and the Controller appeals.

In order properly to resolve this issue, it is necessary to take a brief look at the history of the pension and retirement plans of Pacific Fruit Express Company.

When the Railroad Retirement Act of 1937 was enacted, the board of directors of Pacific Fruit Express noted in its minutes that it provided benefits for its employees and its pensioners substantially equal to or greater than those of the company's plan except for officers and certain supervisory positions. The company, therefore, annulled the pension plan under which it had been operating. At the same time the board of directors resolved that "in lieu of adopting a special retirement plan applicable to persons occupying...official and supervisory positions, this Board will receive and consider recommendations from its executive officers for retirement allowances in individual cases...."

According to the testimony of Mr. Tim Walsh, manager of personnel for Pacific Fruit Express, the company has consistently granted retirement allowances to its executives since 1937 and has granted widows' allowances since 1956. To his knowledge, no executive or surviving widow had ever been denied the benefits. No legal test had ever been made of the right of the company to refuse benefits although on a few occasions, employees reluctant to retire at age 65 had been threatened with a loss of retirement benefits. There were slight across-the-board reductions in payments during the depression, but original allowances were later restored. Mr. Walsh was not aware of the termination of any benefits except on death or remarriage of the widow and this was in accordance with the written description of the Pacific Fruit Express Company pension plan. This description contains the formula upon which the pension is determined.

Mr. Walsh testified that Mr. Schley had attempted to establish a formal plan but did not get the approval from the parent companies, Southern Pacific Transportation Company and Union Pacific Railroad.

1.  *Are the pension benefits exempt from the tax because the employer may have the power to terminate them?*

■ "The inheritance tax is not a tax on the property itself, but is an excise imposed on the privilege of succeeding to property upon the death of the owner. [Citations.] It arises under a general law (Inher. Tax. Law, Stats. 1943, ch. 658, § 1, p. 2297; Rev. & Tax Code, §§ 13301-14901), dealing with a particular area of taxation. An exemption from the burden of such general statute must be clearly shown and will not be inferred from the doubtful import of statutory language. [Citations.]" (*Estate of Simpson* (1954) 43 Cal.2d 594, 597 [275 P.2d 467, 47 A.L.R.2d 991].) In *Simpson,* the Supreme Court considered whether death benefits paid to the widow of a county employee were subject to inheritance tax or were exempt under a provision of the County Employees Retirement Law. The court held that the Government Code provision (§ 31452) exempted employees' retirement benefits only from property tax and suggested that if further extension of the exemption by the Legislature were desired, the act should be so clarified in unmistakably clear language. (*Id.,* at p. 596.) The following year the Legislature amended Government Code section 31452 to include exemption of retirement benefits from inheritance taxes. In 1956, the Legislature enacted section 13880 of the Revenue and Taxation Code exempting from inheritance tax pension rights accruing under *any* public retirement system. No exemption, however, has been enacted for rights accruing under private retirement systems nor does respondent contend that any statutory exemption exists. ■ Respondent contends that her right to receive widow's benefits is not taxable because there was no enforceable contract between decedent and Pacific Fruit Express.

The enforceability of pension rights has been considered under the federal estate tax law. 26 United States Code Annotated section 2039 (a) provides that the gross estate shall include the value of pension payments receivable "under any form of contract or agreement." The Internal Revenue Service in a letter ruling considered the requirement of a "contract or agreement" and concluded: "We believe a payment is includible in the decedent's estate if it can be shown that the payments are in accordance with an established or consistent course of conduct by the employer regardless of whether the agreement is enforceable." (Letter ruling No. 7851010, 3 Fed. Estate & Gift Taxes, [¶] 142, 259,

p. 142, 262.) That the beneficiary's annuity might be forfeitable under certain circumstances would affect the valuation of the annuity for tax purposes, the commission concluded, but would not prevent inclusion in the estate. (See also *Dolak* v. *Sullivan* (1958) 145 Conn. 497 [144 A.2d 312, 315-316]; *Estate of Stone* (1960) 10 Wis.2d 467, [103 N.W.2d 663, 665].) The commissioner distinguished *Estate of Barr* (1963) 40 T.C. 227, a case relied upon by appellant. The commission noted that in *Barr,* the employer's practice in paying a death benefit was not to rely solely upon a plan, formal or informal, but to look into circumstances of the employee's family and pay what it termed a "wage dividend" benefit if warranted.

In its letter ruling the commissioner considered benefits paid under the plan of Union Pacific, a parent company of Pacific Fruit Express, a plan which appears to be materially identical to that of Pacific Fruit Express. No formal plan had been adopted by the board of Union Pacific since 1937 but benefits had been approved by the company consistently and in conformity with a formula and provisions of an informal plan. There appears to be no conceptual antagonism between the commissioner's ruling and California law. The California inheritance tax provisions do not speak in terms of a contract or agreement but in terms of a transfer of "property, or an interest therein." (Rev. & Tax. Code, §§ 13304, 13401, 13643.)* It can no longer be seriously contended that in California a person has no property interest in pension rights. ■ "Although some jurisdictions classify retirement pensions as gratuities, it has long been settled that under California law such benefits 'do not derive from the beneficence of the employer, but are properly part of the consideration earned by the employee.' [Citation.] Since pension benefits represent a form of deferred compensation for services rendered [citation], the employee's right to such benefits is a contractual right, derived from the terms of the employment contract. Since a contractual right is not an expectancy but a chose in action, a form of property [citations], we held in *Dryden* v. *Board of Pension Commrs., supra,* 6 Cal.2d 575, 579 [59 P.2d 104], that an employee acquires a property right to pension benefits when he enters upon the

*Revenue and Taxation Code section 13304 provides: "'Transfer' includes the passage of any property, or any interest therein or income therefrom, in possession or enjoyment, present or future, in trust or otherwise."

Revenue and Taxation Code section 13401 provides: "An inheritance tax is hereby imposed upon every transfer subject to this part."

Revenue and Taxation Code section 13643 provides: "A transfer conforming to Section 13641 [i.e., for less than an adequate and full consideration] and made with the intention that it take effect in possession or enjoyment at or after the death of the transferor is a transfer subject to this part."

performance of his employment contract." (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 845 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) The two concepts, that of "property" and "contract," are related for the property rights in pension benefits are contractual.

There is a similarity of concept between the enforceability of contract rights and the vesting of property rights. "The term 'vested right' is often loosely used. In one sense every right is vested. If a man has a right at all, it must be vested in him; . . . The term, however, is frequently used to designate a right which has become so fixed that it is not subject to be divested without the consent of the owner, as contradistinguished from rights which are subject to be divested without his consent." (*Stohr* v. *Musical Fund Society* (1890) 82 Cal. 557, 560 [22 P. 1125].) ■ It is clear that the Legislature intended that rights would not escape the inheritance tax merely because they are contingent rather than vested in the sense used in *Stohr*. When a transfer is subject to a condition subsequent, Revenue and Taxation Code section 13411, subdivision (a) provides that the tax shall be computed as though the condition has occurred in such manner as to produce the highest rate of tax possible. On the happening of the condition, however, the taxpayer may petition for modification of the tax under Revenue and Taxation Code section 13411, subdivision (b). In the instant case, presumably, the inheritance tax was computed on the actuarial value of the widow's allowance as of the date of the decedent's death. In the event that the widow remarries or the allowance is terminated, the widow would be entitled to an adjustment in the tax liability and to a refund of any overpayment.

Since the Legislature (a) did not exempt pension rights under private plans from the inheritance tax and (b) provided for the handling of contingent interests, we conclude that the Legislature intended that benefits such as those we consider here are subject to inheritance tax.

2. ■ *Was there a transfer of decedent's property interest taking effect at death?*

The trial court concluded that there was no transfer taking place at death within the meaning of the inheritance tax provisions. For death tax purposes, it is not necessary to establish a direct transfer by the decedent. As the Supreme Court said in *Chase Nat. Bank* v. *United States* (1929) 278 U.S. 327, 337 [73 L.Ed. 405, 408-409, 49 S.Ct. 126, 63 A.L.R. 388]: "Obviously, the word 'transfer' . . . cannot be taken in

such a restricted sense as to refer only to the passing of particular items of property directly from the decedent to the transferee. It must, we think, at least, include the transfer of property procured through expenditures by the decedent with the purpose, effected at his death, of having it pass to another."

The instant pension rights were procured through expenditures of decedent; they were consideration for his employment and not a gratuity. That the transfer, if viewed as made during decedent's lifetime, did not take effect in possession or enjoyment until the time of decedent's death does not defeat the tax. (Rev. & Tax. Code, §§ 13643, 13641.)

Respondent says that there was no transfer from decedent because decedent had no right to name a successor. But the pension plan, with which decedent was familiar, provided for a monthly widow's allowance and there was no evidence that he preferred any other arrangement. As Professor Robert Kramer stated in discussing the theoretical underpinnings for taxing pension benefits: "...if, as is true in all of these cases, [the benefit payments] are made to the natural objects of the employee's bounty, his surviving spouse, children, kin, or heirs, we shut our eyes to economic truth if we say these payments are not transferred by him. Again, we must recall we are dealing here, under the estate tax, with employees in the higher echelons—executives who in today's competitive market for talent can and will find other employers if the beneficiary designations are not to their liking, or who will successfully persuade the company itself to alter policies to meet their wishes. Often, one suspects, the exclusive power of designation conferred on the company is given with full consent of the executive employees, who wish it done in this way for tax or other reasons. As a practical matter, the death benefits are paid to the beneficiaries on behalf of the employee, as part of his compensation for his work. The employee is the economic source of the benefits, the transfer is made because of his services. By accepting employment, knowing that benefits will be paid according to the plan, the employee has designated the beneficiaries." (Kramer, *Employee Benefits and Federal Estate and Gift Taxes* (1959) Duke L.J. 341, 351.)

The judgment is reversed.

Scott, J., and Feinberg, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 14, 1980.