[Civ. No. 48008. First Dist., Div. Three. July 28, 1980.]

Estate of ORPHA CLARE ALLEN, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant, v.
HERBERT F. ALLEN, Objector and Respondent.

COUNSEL

Myron Siedorf, Edwin Rosenthal and John D. Schell for Petitioner and Appellant.

Lois J. Scampini and Goth, Dennis & Aaron for Objector and Respondent.

Albert J. Horn, Keith P. Bartel and Carr, McClellan, Ingersoll, Thompson & Horn as Amici Curiae on behalf of Objector and Respondent.

OPINION

**DEARMAN, J.\***—In this case, following the death of a retired airline employee's spouse, the Controller sought to impose an inheritance tax on one-half of the pension that the surviving employee spouse was receiving, despite the fact that receipt of the pension preceded and was unaffected by the decedent's passing. We concur in the superior court's conclusion that such a tax would be improper by virtue of the fact that the community property interest of the nonemployee spouse did not pass to her husband at her death but simply terminated at that time. In reaching this conclusion we reject the Controller's two preliminary contentions and hold that the prong of the "terminable interest" rule articulated in *Waite* v. *Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13], is still viable and that the rationale of *Waite*, which involved a public pension plan, is equally applicable to the private pension plan involved here.

Orpha and Herbert Allen had been married for 36 years when Orpha Allen died in 1977. By then Mr. Allen had retired from Pan American World Airways, his employer throughout the marriage, and was receiving retirement income from Pan American.

The terms of the retirement plan were simple. Mr. Allen would receive $515.46 until he died. If he predeceased his wife she would receive $344.48 until her death. The couple had chosen this plan, with its survivor annuity, over one that would have conferred higher monthly benefits while Mr. Allen lived but no benefits after his death. The plan provided that all benefits received were nonassignable, inalienable and nontransferable, and expressly declared its purposes to be: 1). To induce employees to enter and continue in employment with Pan American World Airways; and 2). To provide sufficient subsistence for retired employees and their dependents.

Orpha Allen died testate and made her husband her sole devisee and legatee. Mr. Allen petitioned the superior court to set aside and confirm the community property (Prob. Code, §§ 650; 201) so that inheritance taxes could be assessed under Revenue and Taxation Code section 13551. The latter statute, enacted in 1975 and repealed while this appeal was pending (Stats. 1980, ch. 634, § 3) allowed taxation of the passage of a deceased spouse's interest in community property to his

---

*Assigned by the Chairperson of the Judicial Council.

or her surviving spouse. Mr. Allen did not list his pension as a community asset. The inheritance tax referee, however, ruled that Mrs. Allen's community property interest in the pension her husband would receive for the rest of his life (he was 64) had "passed" to Mr. Allen within the meaning of section 13551 and computed its value to be $52,864.70. A total of $3,992.30 was assessed in taxes.[1]

Mr. Allen filed his objections in the superior court contending that various decisions of the California Supreme Court had established that his wife's community property interest in the pension had terminated at her death and that she had no power to devise it. He argued that he continued to receive $515.46 per month pursuant only to his prior contractual arrangement with Pan American and that no transfer had occurred within the meaning of the California Inheritance Tax Act. The superior court agreed and struck the interest in the pension from the list of taxable assets. The Controller appeals.

█ Distinguished by what is called in this litigation the "terminable interest" rule, comprised of two California Supreme Court holdings, pension rights must be perceived as a unique species of community property.[2] In *Waite* v. *Waite, supra*, 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13], the decision bearing directly on the instant case, the trial court, upon the divorce of a judge and his wife, ordered the Controller to pay directly to Mrs. Waite *"or her devisee or heirs"* one-half of all benefits payable to her husband under the Judge's Retirement Act. This order followed as a matter of course the usual community property rule, embodied in Probate Code section 201: "Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code." However, the Supreme Court sustained Judge Waite's objection to that

---

[1] In the superior court the Controller agreed that these figures should be lowered slightly, to $52,610.65 and $3,982.14, respectively.

[2] While matured pension rights such as Mr. Allen's have long been recognized as community property (*French* v. *French* (1941) 17 Cal.2d 775, 778 [112 P.2d 235, 134 A.L.R. 366]), the Supreme Court has recently extended the definition of community property to any conditional right acquired with community funds or effort. (*In re Marriage of Skaden* (1977) 19 Cal.3d 679 [139 Cal.Rptr. 615, 566 P.2d 249] (termination benefits); *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164] (nonvested pension).) In so doing the *Brown* opinion (at p. 851, fn. 14) overruled any implication in *Waite* to the effect that nonvested pension rights were not community property. This has no bearing on the application of *Waite* to the instant case.

part of the order regarding payment to Mrs. Waite's heirs. The court held that the state's concern lay in providing subsistence only for the judge and his dependents and not the objects of the nonemployee spouse's bounty. (*Id.* at p. 473.) Despite some ambiguity in the opinion (compare fns. 8 and 9) *Waite* has consistently been interpreted as having limited Mrs. Waite's community property interest in the pension to an interest that survived only as long as she did. (See, e.g., *In re Marriage of Fithian* (1974) 10 Cal.3d 592, 599-600 [111 Cal.Rptr. 369, 517 P.2d 449] cert. den. 419 U.S. 825 [42 L.Ed.2d 48, 95 S.Ct. 41]; *In re Marriage of Lionberger* (1979) 97 Cal.App.3d 56, 71-72 [158 Cal. Rptr. 535]; *In re Marriage of Borges* (1978) 83 Cal.App.3d 771, 774 [148 Cal.Rptr. 118].)

The second and quite different qualification on pension rights as community property was formulated in *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649]. In *Benson* the Supreme Court held that in providing for payment of pension benefits to a deceased public employee's "surviving spouse" the Legislature intended that the deceased's divorced first wife take nothing even though most of the pension was earned during the first marriage. In sum the terminable interest rule asserts that the nonemployee spouse's pension interest terminates at the death of either spouse.

Relying heavily on Reppy, *Community and Separate Interests in Pensions and Social Security Benefits After Marriage of Brown and ERISA* (1978) 25 UCLA L.Rev. 417, 443-482, the Controller argues that *Benson* and *Waite* should not be extended to private pension plans.[3] The gist of the argument is that the terminable interest rule is unfair to nonemployee spouses and conflicts with the principle of spousal equality embodied in decisions such as *In re Marriage of Brown* (1976) 15 Cal. 3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164]. Alternatively, it is argued that if the rule's conflict with the community property statutes can be justified it is only because the cases involved public retirement plans governed by statutes the Supreme Court felt took precedence over (and impliedly amended) the community property statutes. Finally, the Controller contends that the terminable interest rule was never intended to preclude imposition of an inheritance tax. In the context of this case each of these arguments must be rejected.

---

[3]Also arguing that the terminable interest rule should not be extended any further is Thiede, *The Community Property Interest of the Non-Employee Spouse in Private Employee Retirement Benefits* (1975) 9 U.S.F. L.Rev. 635.

First, the Controller has failed to identify a single unfairness attributable to *Waite*'s contribution to the terminable interest rule. By extension of *Waite*, Mrs. Allen's share in the pension could not be passed on to third persons of her choice but automatically went to her husband; likewise, under the plan at issue here the pension payments cease at Mr. Allen's death and thus he, just like his wife, owns no pension rights that can be devised to third persons. While the retirement plan pays Mr. Allen more after Mrs. Allen's death than it would have paid Mrs. Allen had she outlived her husband, the *Waite* holding is in no way responsible for that inequality; community property law does not yet dictate the economic terms of a pension package. (See *Brown, supra*, 15 Cal.3d at pp. 849-850; *Waite, supra*, 6 Cal.3d at p. 473, fn. 8.) And while a fair argument exists that the egalitarian spirit of *Brown, supra*, and the holding of *Benson, supra*, are incompatible (see, e.g., *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 656 [115 Cal.Rptr. 184]), a similar incompatibility is not indicated with respect to *Waite*.[4] Identifying the *Waite* and *Benson* decisions as comprising a single rule is but a convenient fiction; the viability of the former in no way depends upon the viability of the latter.

Moreover, the result in *Waite* not only created little inequality; it was clearly powered by its own consideration of fairness. The court in *Waite* focused on the special purpose of the pension at issue there: "provision for the subsistence of the employee and his spouse. . . . Once the spouse dies, of course, her need for subsistence ends, and the state's interest in her sustenance reaches a coincident completion. When this termination occurs, the state's concern narrows to the sustenance of the retired employee; its pension payments must necessarily be directed to that sole objective." (6 Cal.3d at p. 473.) The court thus highlighted the unique place of such a pension in community property law: it is property that is meant to be shared by the spouses and only the spouses, and one whose purpose would be wholly defeated by allowing the deceased spouse to bequeath his or her share to third persons. The Supreme Court has recently stressed that the function of a benefit, rather than its label, determines where the benefit is to be placed on the community property/separate property spectrum. (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 786-787 [148 Cal.Rptr. 9, 582 P.2d 96]; *accord, In re Marriage of Webb* (1979) 94 Cal.App.3d 335, 342 [156 Cal.Rptr.

---

[4] Whereas *Waite* cuts off the nonemployee spouses' pension rights at the nonemployee's death, *Benson* cuts them off while the nonemployee is still alive and personally in need of them.

334].) It seems perfectly appropriate to the function of pension benefits that they automatically pass to the surviving spouse.

For similar reasons we reject the alternative argument that *Waite* cannot be applied to a private pension. The argument is simply that Probate Code section 201 states the controlling rule: "Upon the death of either husband or wife, one-half of the community property . . . is subject to the testamentary disposition of the decedent. . . ." *Waite* is explained as having read the Judicial Retirement Act as impliedly amending section 201, a power not given to a private employer.

However, *Waite* never refers to section 201 and, as all courts that have addressed similar issues have presumed, the decision expresses a philosophy not limited to its specific facts. (See, e.g., *Lionberger, supra*; *Borges, supra*.) ■ The fact is that the Supreme Court has recognized that a pension is not precisely like other forms of community property: because of its unique purpose a nonemployee spouse's interest in pension rights is a "*nontestamentary* community property right," surviving only as long as the nonemployee spouse. (*In re Marriage of Fithian, supra*, 10 Cal.3d at pp. 599-600 (italics added).) It is a form of community property to which the testamentary proviso of section 201 therefore does not apply.

Finally, we reject the Controller's assertion that in any event *Waite* does not preclude imposition of an inheritance tax, because Mrs. Allen's one-half interest in the monthly pension "passed" to her husband upon her death within the meaning of Revenue and Taxation Code section 13551, subdivision (a): "Upon the death of a spouse: (a) All of the decedent's one-half interest in the community property passing to anyone including the surviving spouse, is subject to this part." After oral argument in this case the Legislature repealed section 13551, subdivision (a) (Stats. 1980, ch. 634, § 3) and amended section 15310 to read: "In the case of a transfer to either spouse by the other, none of the property transferred is subject to this part, except that if a limited power of appointment over any portion or all of the donor's property is given to the donor's spouse, the value of such property is subject to this part; provided, however, that the value of any interest, other than the power itself, given to the donor's spouse in such property is not subject to this part." (*Id.*, § 40.) In light of these developments we are naturally disinclined to read into the short-lived section 13551 a broad legislative intent to tax any benefit enjoyed by a surviving spouse simply because

the decedent once also held an interest in the benefit. It is sufficient to point out that presumably the premise of taxing the postdeath transfer of community property between spouses was that the deceased had testamentary power over his or her share in the community (Prob. Code, § 201) and that passage to the surviving spouse was not inevitable.[5] As we concluded earlier in this opinion Mrs. Allen had no power to bequeath her interest in the pension funds.

In *Estate of Schley, supra,* 100 Cal.App.3d 161 [161 Cal.Rptr. 104], we upheld the Controller's attempt to tax one-half of an annuity paid to a nonemployee spouse whose employee spouse had predeceased her, holding that a "transfer" had occurred in the latter situation. (*Id.* at p. 168.) The Controller contends that *Schley* and the instant case compel similar results. However, in *Schley,* a case not argued on the basis of spousal equality, we perceived, on the basis of the arguments made, the situation to be one in which the widow's annuity represented income earned while Mr. Schley was living, receipt of which the couple chose to have deferred and to have transferred to Mrs. Schley should her husband die first. In the instant case, by contrast, the enjoyment of no portion of Mrs. Allen's interest in the community property was deferred and transferred to her husband. As was the objective of the benefit earned by the community, Mrs. Allen received sustenance from the retirement funds while she lived. At her death Mrs. Allen's interest did not "pass" to her husband; rather, the retirement funds continued to sustain the surviving member of the community. Revenue and Taxation Code section 13551, subdivision (a) is inapplicable.

The judgment is affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1980.

---

[5]As we noted in *Estate of Schley* (1979) 100 Cal.App.3d 161, 165 [161 Cal.Rptr. 104], quoting *Estate of Simpson* (1954) 43 Cal.2d 594, 597 [275 P.2d 467, 47 A.L.R.2d 991]: "The inheritance tax is not a tax on the property itself, but is an excise imposed on the privilege of succeeding to property upon the death of the owner."