[No. A030984. First Dist., Div. Four. Feb. 13, 1987.]

In re the Marriage of ALICE R. and WARREN K. TAYLOR.
WARREN K. TAYLOR, Respondent, v.
ALICE R. TAYLOR, Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II-B, II-C and III.

**COUNSEL**

D. Thomas Woodruff, Carson, Woodruff, O'Hair & Munsill, De Goff & Sherman and Richard Sherman for Appellant.

Gerald J. Adler for Respondent.

OPINION

CHANNELL, J.—Wife appeals from a postjudgment order determining her interest in Husband's judicial retirement benefits and denying her requests for modification of spousal support and for attorneys' fees.

In her appeal, Wife has challenged the validity of the "terminable interest rule," as it has been applied under the Judges' Retirement Act. We are satisfied that the trial court's order, when entered, was correct and in accord with then-existing law. After this case was fully briefed, however, the Legislature added section 4800.8 to the Civil Code,[1] effective January 1, 1987, with the express intent "to abolish the terminable interest rule." (See Stats. 1986, ch. 686, § 2.) We requested the parties to submit letter briefs regarding the impact of the new legislation on this case. Having concluded that the new law may be applied to this case, we are remanding the matter to the trial court for further consideration in light of section 4800.8.

## I. FACTS

Husband and Wife were married on July 1, 1948, and separated on June 1, 1976. Husband began service as a superior court judge on May 1, 1963, a position he held until he elected to retire on July 31, 1984.

During the initial dissolution proceedings in 1978, the trial court concluded that Wife had a community property interest in a certain portion of Husband's judicial retirement benefits, but reserved jurisdiction over valuating Wife's share until such time as Husband was eligible to retire.[2] Spousal support was ordered in the amounts of $750 per month for six months, $500 per month for six months, and $1 per year until further order of the court, death, or remarriage of Wife. No attorneys' fees or costs were awarded.

Husband first became eligible to retire as a superior court judge on May 1, 1983. In October 1983, Wife filed a motion seeking her proportionate share of Husband's retirement benefits that he would have received had he retired on May 1, 1983.[3] Thereafter, Wife also moved for modification of

---

[1]Unless otherwise indicated, all section references are to the Civil Code.

[2]The trial court stated that Wife's percentage share "would be one-half of that proportion of the retirement as is represented by a fraction made up of the number of months of employment during the marriage, prior to separation (157 months), over the total months of husband's employment required for retirement eligibility (240 months)." Neither party disputed that formula, which meant that Wife was entitled to 32.71 percent of Husband's retirement benefits. Subsequent disputes were over the valuation of those benefits and the duration of the payments.

[3]A trial court may order the immediate payment of a nonemployee spouse's interest in a retirement benefit, where the employee spouse is eligible to retire and receive the benefit but chooses not to do so. (In re Marriage of Gillmore (1981) 29 Cal.3d 418 [174 Cal.Rptr. 493, 629 P.2d 1].) As Husband retired before the modification proceedings were completed, the Gillmore principles were never applied.

her spousal support, requesting $2,500 per month. Attorneys' fees were also requested. Before hearing, Husband notified the Judges' Retirement System of his intent to retire effective July 31, 1984, making him eligible to receive judicial retirement benefits commencing September 1, 1984.

At the hearing, the issues were submitted primarily on declarations, deposition testimony, and offers of proof. On November 8, 1984, the court issued its order. Wife's motions to increase spousal support and for attorneys' fees were denied. Concerning the retirement benefits, Wife was to receive direct monthly payments equalling 32.71 percent of the gross amount, including cost of living and other adjustments. On Wife's death, the rights and interests of Wife and her estate to receive the benefits would terminate "and [Husband] shall be entitled to receive the entire payment. [Wife] shall be entitled to reserve 32.71 per cent of each monthly payment *during the joint lives of [Wife] and [Husband].*" (Italics added.) Significantly, the court reserved jurisdiction "to make all necessary and appropriate orders regarding [Husband's] retirement benefits."

## II. Discussion

### A. *Judicial Retirement Benefits*

#### 1. *The Trial Court's Order Was Correct When Entered*

In its order, the trial court indicated Wife was to receive 32.71 percent of Husband's monthly retirement payments "during the joint lives" of Husband and Wife. On appeal, Wife contends that the trial court erred in that the effect of its order was to deprive her of a substantial portion of her one-half share of the community interest in the retirement benefits. To support her contention, Wife challenged the validity of the so-called "terminable interest rule," as it has been applied under the Judges' Retirement Law.[4]

It has been said that there are two aspects to the terminable interest rule, each of which Wife claims serves to deprive her of her full share of commu-

---

[4]The phrase "terminable interest" does not appear in either of the cases from which it is said to have evolved. (See generally *Waite* v. *Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13]; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649].) The phrase apparently originated in Thiede, *The Community Property Interest of the Nonemployee Spouse in Private Employee Retirement Benefits* (1975) 9 U.S.F. L.Rev. 635, 638-639. (See Culhane, *Toward Pension Equality: A Reexamination of California's Terminable Interest Doctrine* (1984) 14 Sw.U.L.Rev. 613, 615, fn. 5; Reppy, *Community and Separate Interests in Pensions and Social Security Benefits after Marriage of Brown and ERISA* (1978) 25 UCLA L.Rev. 417, 443, fn. 92.) Professor Reppy refers to the rule as " 'the *Benson-Waite* doctrine.' " (*Ibid.*)

nity property in a different manner. First, the accrued benefits do not extend to pension benefits payable following the death of the employee spouse. (*Benson* v. *City of Los Angeles, supra,* 60 Cal.2d 355; *Bowman* v. *Bowman* (1985) 171 Cal.App.3d 148, 152 [217 Cal.Rptr. 174].) Thus, if Husband died before Wife, the remainder of the benefits would go entirely to Husband's second wife, even though they were earned in large part during Husband's marriage to his first wife.

For example, in this case, Husband's election to retire was made under the provisions of Government Code section 75033.5. That section has provided for an annuity benefit to "[t]he *surviving spouse* of any judge who has so elected to retire" thereunder. (Italics added.) The Judges' Retirement Law itself has made no provision for survivors' benefits to a former spouse of the judge. "The Judges' Retirement Law designates the surviving spouse, not the ex-spouse, as recipient; it is designed for the support of the former, not the latter." (*In re Marriage of Andreen* (1978) 76 Cal.App.3d 667, 674 [143 Cal.Rptr. 94], following *Benson* v. *City of Los Angeles, supra,* 60 Cal.2d 355.) As a matter of law, payments to Wife would cease on Husband's death.

The second aspect of the terminable interest rule postulates that the nonemployee spouse's interest in the pension benefits terminates upon that person's death, so that the nonemployee spouse may not bequeath the benefits by will. (*Waite* v. *Waite, supra,* 6 Cal.3d 461; *Bowman* v. *Bowman, supra,* 171 Cal.App.3d at p. 152.) Thus, if Wife died first, her share of the benefits, which would be payable to her if she continued to live, would revert to Husband. All of the benefits, including Wife's community property share, would become payable to Husband for the rest of his life.

The Judges' Retirement Law itself has made no provision for the payment of benefits to the heirs or devisees of the former spouse of the judge. "The state's concern . . . lies in provision for the subsistence of the employee and his spouse, not in the extension of benefits to such persons or organizations the spouse may select as the objects of her bounty." (*Waite* v. *Waite, supra,* 6 Cal.3d 461, 473.) In *Waite,* our Supreme Court concluded that the statutory design for a judge's pension negated the spouse's contention that her legatees should inherit pension payments payable for the balance of the judge's life. "Whatever community interest the wife may claim, it cannot transcend the legislation upon which the pension itself rests." (*Id.,* at p. 474.)[5]

---

[5]It has been suggested that the terminable interest provisions in governmental pension statutes had impliedly repealed portions of the community property statutes. (See, e.g., *Bowman* v. *Bowman, supra,* 171 Cal.App.3d at p. 155.)

At the time it was entered, the trial court's order that Wife was entitled "to receive 32.71 percent of each monthly payment during the joint lives" of Husband and Wife was consistent with these principles of law.

2. *Applicability of New Section 4800.8*

■ The terminable interest rule generated its share of appellate and academic criticism. (*Bowman* v. *Bowman, supra,* 171 Cal.App.3d at pp. 151-156 [declined to apply rule to *private* pension plan]; *Chirmside* v. *Board of Administration* (1983) 143 Cal.App.3d 205, 210-211 [191 Cal.Rptr. 605] [declined to extend to community contributions in a fully vested public retirement plan]; *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 656 [115 Cal.Rptr. 184] [dicta stating rule not believed fair]; see also Culhane, *Toward Pension Equality: A Reexamination of California's Terminable Interest Doctrine, supra,* 14 SW.U.L.Rev. 613, 616-617; Reppy, *Community and Separate Interests in Pensions and Social Security Benefits after Marriage of Brown and ERISA, supra,* 25 UCLA L.Rev. 417, 444-445, 480-482.) Whatever courts may have felt about the fairness of the terminable interest rule, however, they were confronted with the fact that these features were an integral part of legislatively enacted public pension plans which, by their terms, have been restrictive in their choice of beneficiaries. (See Judicial Retirement Law [Gov. Code, § 75000 et seq.]; for listing of other legislative enactments having these features, see Reppy, *supra,* 25 UCLA L.Rev. at pp. 444-445, fn. 98; cf. *Bowman* v. *Bowman, supra,* 171 Cal.App.3d at p. 156.)

While this case was pending before this court, the Legislature amended the Family Law Act to require courts, when dividing community property interests in any retirement plan, to make whatever orders are necessary or appropriate to assure that each party receives a full community property share of any retirement plan. (Stats. 1986, ch. 686, § 1.)[6] In an uncodified section, the Legislature expressed its intent "to abolish the terminable interest rule set forth in Waite v. Waite, 6 Cal.3d 461, and Benson v. City of Los Angeles, 60 Cal.2d 355, in order that retirement benefits shall be divided in accordance with Section 4800." (Stats. 1986, ch. 686, § 2.)

In response to our request for letter briefs regarding the extent to which this statute could constitutionally be applied to this case, Husband argues

---

[6]Chapter 686, adds section 4800.8 to the Civil Code, effective January 1, 1987, to read: "The court shall make whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in any retirement plan, whether public or private, including all survivor and death benefits, including, but not limited to, either of the following: [¶] (a) Order the division of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 4800. [¶] (b) Order a party to elect a survivor benefit annuity or other similar election for the benefit of the other party, as specified by the court, in any case in which a retirement plan provides for such an election."

that at least since May 1, 1983, when he first became eligible to retire as a judge, both he and his second wife have had a vested contractual and statutory right to require the Judicial Retirement System to pay to her, if she survives him, one-half of the retirement allowance that would be payable to Husband were he living and receiving benefits under Government Code section 75033.5. He argues that to make section 4800.8 retroactive in a way which would reduce the second wife's benefits below one-half of the retirement allowance would impair the obligation of the contract between the Judicial Retirement System, Husband, and his second wife. (See Cal. Const., art. I, § 9; *Miller* v. *California* (1977) 18 Cal.3d 808, 816 [135 Cal.Rptr. 386, 557 P.2d 970].)

Wife responds that the rights of the parties that are affected by the terminable interest rule necessarily involve only events that will happen in the future, when one of the parties dies. Wife analogizes the situation here to that when our Supreme Court upheld the concept of quasi-community property, which becomes applicable only if, after acquisition of domicile in California, certain acts or events occur which result in termination of the marriage. (*Addison* v. *Addison* (1965) 62 Cal.2d 558, 566 [43 Cal.Rptr. 97, 399 P.2d 897, 14 A.L.R.3d 391].) Further, Wife contends that neither *In re Marriage of Buol* (1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354], nor *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253], precludes the application of section 4800.8 in this case.

We agree with Wife that section 4800.8 may be applied to this case. The rights to retirement benefits at issue in this case are retirement rights which will only arise on the happening of events in the future. When our Supreme Court first held that retirement rights comprise a community asset subject to division in a dissolution proceeding, it held that its decision would apply retroactively "to any case in which the property rights arising from the marriage have not yet been adjudicated, to such rights if such adjudication is still subject to appellate review, or if in such adjudication the trial court has expressly reserved jurisdiction to divide pension rights." (*In re Marriage of Brown* (1976) 15 Cal.3d 838, 851 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].) This case, of course, is still undergoing appellate review. Further, the trial court expressly reserved jurisdiction "to make all necessary and appropriate orders regarding [Husband's] retirement benefits." Thus, under *Brown,* the trial court may exercise its jurisdiction to carry out the new legislative mandate to "make whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in any retirement plan" in accord with section 4800.8.

More recently, however, despite statements of legislative intent to the contrary, our Supreme Court has held that two statutes affecting marital

property rights could not be applied retroactively. In *In re Marriage of Buol, supra,* 39 Cal.3d 751, it was held that section 4800.1, which requires a writing to prove, upon dissolution of marriage, that property taken in joint tenancy form is the separate property of one spouse, could not constitutionally be applied to cases pending before its effective date. (*Id.,* at pp. 754, 763-764.) Similarly, in *In re Marriage of Fabian, supra,* 41 Cal.3d 440, the Supreme Court held that retroactive application of section 4800.2, providing for reimbursement of separate property contributions to community assets absent a signed writing waiving such reimbursement, produced the same unconstitutional result. (*Id.,* at p. 443; see also *In re Marriage of Griffis* (1986) 187 Cal.App.3d 156 [231 Cal.Rptr. 510] [1986 urgency legislation making §§ 4800.1 and 4800.2 applicable to all proceedings on or after Jan. 1, 1984, regardless of acquisition date, violates due process].)

In both *Buol* and *Fabian,* however, the court carefully pointed out that "[i]mpairment of a vested property interest, alone, does not invalidate retroactive application of a statutory measure. Retroactivity is barred only when such impairment violates due process of law (Cal. Const., art. I, § 7)." (*In re Marriage of Fabian, supra,* 41 Cal.3d at p. 448; *In re Marriage of Buol, supra,* 39 Cal.3d at p. 761; see also *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371].) The constitutional question is " ' "not whether a vested right is impaired by a marital property law change, but whether such a change reasonably could be believed to be sufficiently necessary to the public welfare as to justify the impairment." ' " (*Ibid.; Addison* v. *Addison, supra,* 62 Cal.2d at p. 566.)

In *Buol* and *Fabian,* the court found the state interest in equitable division of marital property and equitable dissolution of marital partnership insufficient to justify *retroactive* application of the statutes involved. In each instance, the deciding factor seemed to be the absence of a "rank injustice" in the former law which would be cured by retroactive application of the new section. (*In re Marriage of Buol, supra,* 39 Cal.3d at p. 761; *In re Marriage of Fabian, supra,* 41 Cal.3d at p. 449.) In those circumstances, the court concluded the statutes as applied impaired vested property rights without due process of law.

In contrast to the state of the law involved in *Buol* and *Fabian,* the law prior to the enactment of section 4800.8 can be viewed as unfair and as preserving an injustice. In 1974, for example, Justice Kaus wrote: "We do not believe the rule which we must follow is fair. [Footnote.] [Husband's] pension rights constitute a bundle to which [wife], as a partner in the community during the years of marriage contributed her equal share. Why should she be deprived of her right to any single stick in the bundle? [Citations.] We must, however, follow *Benson* [and other cases]." (*In re Marriage of*

*Peterson, supra,* 41 Cal.App.3d at p. 656; see also *Bowman* v. *Bowman, supra,* 171 Cal.App.3d at pp. 154-155.)

Statutes enacted to cure an injustice in the former law and to promote the state interest in equitable division of community property have been allowed to apply retroactively. (See *In re Marriage of Howard* (1986) 184 Cal.App.3d 1, 8 [228 Cal.Rptr. 813] [§ 4800.7, relating to award of family home]; *In re Marriage of Slivka* (1986) 183 Cal.App.3d 159, 166-168 [228 Cal.Rptr. 76] [§ 4800.3, providing for community reimbursement for contributions to education or training]; cf. *In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 766-768 [209 Cal.Rptr. 354, 691 P.2d 1020] [appellant whose case was pending on appeal when § 4800.3 enacted entitled to benefits of new law; cause remanded].) We similarly conclude that section 4800.8 may be applied to this case.

The trial court did not, of course, make whatever orders are necessary or appropriate to implement section 4800.8, since that provision was not in existence at that time. Accordingly, that portion of the trial court's order determining Wife's interest in Husband's judicial retirement benefits must be reversed. (See *In re Marriage of Sullivan, supra,* 37 Cal.3d at p. 768.) In remanding the cause for reconsideration of that issue, the trial court is ordered to hold a further hearing at which Husband, Wife, and the administrators of the Judges' Retirement System (§ 4363 et seq.) shall have the opportunity to call witnesses and present relevant evidence. The trial court shall then make whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in the retirement plan, in accord with the provisions of section 4800.8.

B., C.*

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

III.*

.    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

Anderson, P. J., and Poché, J., concurred.

Respondent's petition for review by the Supreme Court was denied May 14, 1987. Mosk, J., did not participate therein.

*See footnote, *ante,* page 435.