[No. D007096. Fourth Dist., Div. One. Dec. 7, 1988.]

Estate of KATHLEEN S. AUSTIN, Deceased.
GRAY DAVIS, Petitioner and Appellant, v.
ARTHUR L. AUSTIN, Objector and Respondent.

COUNSEL

Myron Siedorf and Phyllis K. Fairbanks for Petitioner and Appellant.

Harmsen, Carpenter, Sidell & Olson, Harlan F. Harmsen and Timothy G. Riley for Objector and Respondent.

OPINION

TODD, J.—This case involves the state inheritance tax which is no longer in existence. Kathleen S. Austin died November 7, 1980, before the effective dates of law changes concerning the state's inheritance tax making the tax inapplicable to transfers between spouses (Jan. 1, 1981; Stats. 1980, ch. 634, § 46, p. 1760; see *Estate of Nicoletti* (1982) 129 Cal.App.3d 475, 478-483 [181 Cal.Rptr. 137]) and repealing the tax altogether (adopted at Gen. Elec. of June 8, 1982, initiative measure; Stats. 1982, ch. 1535, § 14, p. 5974; see *Estate of Gibson* (1983) 139 Cal.App.3d 733, 736 [189 Cal.Rptr. 201]).

In the calculation of the inheritance tax, a December 3, 1986, report of the inheritance tax referee included the value of pension and profit-sharing plans established by the professional corporation of Arthur L. Austin, D.D.S., Kathleen's surviving spouse. Arthur, executor of Kathleen's estate, objected to the report. On September 9, 1987, the probate court entered its order fixing inheritance tax, excluding the total value of the pension and profit-sharing plans. In so ruling the probate court relied on *Estate of Allen* (1980) 108 Cal.App.3d 614, 617-621 [166 Cal.Rptr. 653], holding the community property interest of a deceased nonemployee spouse in a private pension plan is a "terminable interest," a unique species of community property which survived only so long as either spouse lived. (See *Waite* v. *Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13]; *Benson* v. *City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649].) As a result under the *Allen* holding, nothing passes to the surviving spouse within the meaning of former Revenue and Taxation Code[1] section 13551,[2] and thus no inheritance tax becomes payable. Gray Davis, State Controller, appeals the order fixing inheritance tax.

Holding the *Allen* case is not valid precedent primarily because the "terminable interest" rule has been retroactively repealed, we reverse and remand with directions to refix the inheritance tax by including Kathleen's one-half community property interest in the profit-sharing and pension plans.

## FACTS

In 1971 the professional corporation of Kathleen's husband, Arthur, entered into two plans, a profit sharing plan and a pension plan. Pursuant to a formula in each plan, community property funds in the professional corporation account were contributed to the plans each year. The plans were terminable by the professional corporation. The board of directors of the professional corporation was composed of Arthur, as director, and Kathleen, as secretary. The plans met Internal Revenue Code requirements for qualified corporate retirement plans and were maintained in compliance with the provisions of the Employees' Retirement Income Security Act of 1974 (ERISA) and the regulations of the Internal Revenue Service.

As of the November 7, 1980, date of Kathleen's death, the profit sharing and pension plans had an aggregate value of $297,607. The report of the

---

[1] All statutory references are to the Revenue and Taxation Code unless otherwise specified.

[2] Section 13551 provided: "Upon the death of a spouse: [¶] (a) All of the decedent's one-half interest in the community property passing to anyone, including the surviving spouse, is subject to this part. [¶] (b) The one-half of the community property which belongs to the surviving spouse is not subject to this part." (Stats. 1975, ch. 942, § 2, p. 2104.)

inheritance tax referee includes that value in the inheritance tax computation and results in a total tax of $46,273 with $38,122 chargeable to Arthur. The order fixing inheritance tax, deleting that aggregate value, set a total tax of $14,012 with $5,861 chargeable to Arthur.

## DISCUSSION

We may assume initially for purposes of this discussion the *Allen* case, *supra,* 108 Cal.App.3d 614, is factually applicable to this case and correctly decided on the basis of the law in existence when the decision was made.[3] However, the underlying premise of *Allen* that there is such a thing as a terminable interest has been legislatively abolished (Stats. 1986, ch. 686, § 2)[4] and the abolition is retroactive. (*In re Marriage of Taylor* (1987) 189 Cal.App.3d 435, 440-443 [234 Cal.Rptr. 486].) Thus, the *Allen* case carries with it no precedential value. It would be improper to apply *Allen* to any other case, including this one.

At the date of Kathleen's death, under the law as it existed sans the terminable interest theory, it is clear the profit sharing and pension plans in question resulted in a transfer calling for application of the inheritance tax as to Kathleen's one-half interest in the plans.

To establish taxability, the Controller relies primarily on former section 13551, making the decedent's one-half interest in the community property passing to anyone subject to the inheritance tax, and former section 13643, which read, in part: "A transfer . . . made with the intention that it take effect in possession or enjoyment at or after the death of the transferor is a transfer subject to this part."

---

[3] The Controller argues *Allen* is factually inapplicable and incorrectly decided. On the question of factual applicability, the Controller points out the employed spouse had no control or choice in the terms of the pension or in what contributions were made by the company. By contrast, here the employed spouse "had every choice. He was the corporation. He chose the terms of the trusts. He could terminate the trusts. He decided on the amount of the contribution. He had complete control over the provisions of the plan."

In addition, the Controller notes that in *Allen* the retirement had occurred with the employee spouse having selected the payment option and receiving those payments which would not increase as a result of the death of the nonemployed spouse. Here, there was no retirement in effect and Arthur could receive substantially more without restrictions on the time of retirement, method of payment or his rights to Kathleen's share of the community represented in the plans.

Concerning whether *Allen* was correctly decided, the Controller argues the court did not consider the statutory scheme in effect at the date of death and was inconsistent with prior law.

[4] Section 2 of chapter 686 of the Statutes of 1986 expresses the Legislature's intent "to abolish the terminable interest rule set forth in Waite v. Waite, 6 Cal.3d 461, and Benson v. City of Los Angeles, 60 Cal.2d 355, in order that retirement benefits shall be divided in accordance with [Civil Code] Section 4800."

The Controller also relies on former sections 13304 and 13649, providing: "13304. 'Transfer' includes the passage of any property, or any interest therein or income therefrom, in possession or enjoyment, present or future, in trust or otherwise.

"13649. It is hereby declared to be the intent and purpose of this part to tax every transfer made in lieu of, or to avoid, the passing of property by will or the laws of succession."

■ The repeal of these provisions cannot be applied retroactively, for to do so would effect a prohibited gift of state funds. (*Estate of Skinker* (1956) 47 Cal.2d 290, 296-297 [303 P.2d 745, 62 A.L.R.2d 1137].) The law in effect at Kathleen's death is to be applied. (*Ibid.*) ■ Due to the repeal of the terminable interest rule, which is to be considered retroactive (*In re Marriage of Taylor, supra,* 189 Cal.App.3d 435, 440-443), we are applying as the law in effect at Kathleen's death a state of the law that does not include the terminable interest rule.

■ Any exemption from the burden of the inheritance tax must be clearly shown and will not be inferred. (*Estate of Simpson* (1954) 43 Cal.2d 594, 597 [275 P.2d 467, 47 A.L.R.2d 991]; see also *Kirkwood* v. *Bank of America* (1954) 43 Cal.2d 333, 341 [273 P.2d 532].) ■ To accomplish the legislative purpose of preventing avoidance of inheritance tax, former section 13643 represented "an attempt to *impose a tax in all cases,* regardless of the form of transfer adopted, in which possession or enjoyment does not take effect until the donor's death." (*Estate of Madison* (1945) 26 Cal.2d 453, 463 [159 P.2d 630]; italics added.) *Estate of Thurston* (1950) 36 Cal.2d 207, 210-211 [223 P.2d 12], explains: " 'The statute taxes not merely those interests which are deemed to pass at death according to refined technicalities of the law of property. It also taxes *inter vivos* transfers that are too much akin to testamentary dispositions not to be subjected to the same excise.' [Citations.] The tax is imposed on the *inter vivos* transfer but its collection is postponed until the death of the transferor, and it is measured by the market value of the transferred property at the date of his death."

■ For purposes of the inheritance tax with respect to inter vivos transfers, it is necessary to examine the substance and effect, rather than the form, of the transfer in order to classify it properly. (*Estate of Huntzinger* (1974) 38 Cal.App.3d 569, 575 [113 Cal.Rptr. 227].) The character of the interest created by the transfer is controlling, not the intention of the transferor, and beneficial succession is the measure in determining inheritance tax liability. (*Estate of Butler* (1980) 27 Cal.3d 781, 788 [166 Cal.Rptr. 711, 613 P.2d 1245].)

It must be borne in mind that in determining the inheritance taxability results of a lifetime transfer "the relevant and critical question is whether a significant *change of possession and enjoyment* takes place at the time of the transferor's death." (*Estate of Butler, supra,* 27 Cal.3d 781, 789.) The emphasis is "on the shift in possession and enjoyment which occurs at the transferor's death, rather than the shift in title at the time of the transfer." (*Estate of Elsman* (1977) 74 Cal.App.3d 721, 727 [141 Cal.Rptr. 657].)

■ The right of an employee spouse in a retirement plan is limited by the fact the nonemployee spouse has an interest in the retirement benefits. (*In re Marriage of Gilmore* (1981) 29 Cal.3d 418, 425 [174 Cal.Rptr. 493, 629 P.2d 1].) This principle applies with equal force to the pension and profit sharing plans here under consideration which were the community property of the parties. (See *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164].)

■ Commencing with this principle, when Kathleen died her community property interest, which had been a limitation on Arthur's interest in the plans, shifted significantly in terms of possession and enjoyment. Her possession and enjoyment went into the complete control of Arthur. This "relevant and critical question" having been so determined (*Estate of Butler, supra,* 27 Cal.3d 781, 789), the conclusion follows that this was a transfer intended to take effect in possession or enjoyment at or after the death of the transferor Kathleen. (Former § 13643.) Also, since Kathleen's one-half community property interest passed to Arthur, it was subject to application of the inheritance tax. (Former § 13551.) Under the rules of strict construction applicable to the inheritance tax, there is no clear exemption from the tax. It follows, an inheritance tax is payable as a result of the transfer involved here.

Assuming we are not correct in our determination the *Allen* case has been statutorily abolished due to the retroactive abolition of the terminable interest rule, we nevertheless believe that the case does not furnish sound authority for holding no tax was due on Kathleen's death. First, the same Pan American World Airways pension plan considered in *Allen* was also considered in the later case of *Bowman* v. *Bowman* (1985) 171 Cal.App.3d 148 [217 Cal.Rptr. 174]. *Bowman* held the terminable interest rule inapplicable to that private plan which was nonrestrictive in its choice of beneficiaries. (*Id.* at p. 151.) *Bowman* states, in part: "It makes no sense to say Celia [nonemployee spouse] and Rudy [employee spouse] together owned their assets but at his death when the assets matured, they succeeded to Rudy's estate." (*Id.* at p. 156.)

This statement, with which we agree, is in direct contravention to the basic tenet of *Allen* that the community property interest disappears on the

death of either spouse. Since we agree with the *Bowman* statement and since *Bowman* was decided by a Court of Appeal in the Fourth District (Div. Three) rather than the First District (Div. Three) in which *Allen* was decided, we follow the *Bowman* holding. ■ The trial court too should have followed *Bowman*. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 764, 771, pp. 732-733, 740.)

We note the same court which decided *Allen* also decided *Estate of Schley* (1979) 100 Cal.App.3d 161 [161 Cal.Rptr. 104]. *Schley* held under sections 13643 and 13641[5] that one-half the value of the nonemployee surviving spouse's continued pension benefit in a private pension plan was subject to the inheritance tax because "[t]he instant pension rights were procured through expenditures of decedent; they were consideration for his employment and not a gratuity. That the transfer, if viewed as made during decedent's lifetime, did not take effect in possession or enjoyment until the time of decedent's death does not defeat the tax. [Citations.]" (*Id.* at p. 168.) This description applies to the pension and profit sharing plans here under consideration.

In attempting to distinguish *Schley*, *Allen* stated: "In *Estate of Schley, supra*, 100 Cal.App.3d 161 [161 Cal.Rptr. 104], we upheld the Controller's attempt to tax one-half of an annuity paid to a nonemployee spouse whose employee spouse had predeceased her, holding that a 'transfer' had occurred in the latter situation. (*Id.* at p. 168.) The Controller contends that *Schley* and the instant case compel similar results. However, *in Schley,* a case not argued on the basis of spousal equality, we perceived, on the basis of the arguments made, the situation to be one in which *the widow's annuity represented income earned while Mr. Schley was living, receipt of which the couple chose to have deferred and to have transferred to Mrs. Schley should her husband die first.* In the instant case, by contrast, the enjoyment of no portion of Mrs. Allen's interest in the community property was deferred and transferred to her husband. As was the objective of the benefit earned by the community, Mrs. Allen received sustenance from the retirement funds while she lived. At her death Mrs. Allen's interest did not 'pass' to her husband; rather, the retirement funds continued to sustain the surviving member of the community. Revenue and Taxation Code section 13551,

---

[5]Section 13641 provided: "If a transfer specified in this article was made during lifetime by a decedent, for a consideration in money or money's worth, but the transfer was not a bona fide sale for an adequate and full consideration in money, or money's worth, the amount of the transfer subject to this part shall be the excess of

"(a) The value, at the date of the transferor's death, of the property transferred, over

"(b) An amount equal to the same proportion of the value, at the time of the transferor's death, of the property transferred which the consideration received in money or money's worth for the property transferred bears to the value, at the date of transfer, of the property transferred." (Stats. 1969, ch. 1200, § 6, p. 2336.)

subdivision (a) is inapplicable." (*Estate of Allen, supra,* 108 Cal.App.3d 614, 621, italics added.)

■ The above italicized language of *Allen,* in contrast to the immediately following sentence, accurately describes the pension and profit sharing plans in this case as well as in *Schley.* Accordingly, the *Schley* result rather than the *Allen* result is to be followed in this case. There was a transfer subject to the inheritance tax on Kathleen's death.

Moreover, we have serious doubt as to the propriety of *Allen's* reliance on a statute enacted after oral argument in the case (Stats. 1980, ch. 634, § 3, p. 1747; see *Allen, supra,* 108 Cal.App.3d 614, 620-621) as a basis for reaching its conclusion. Such reliance appears to conflict with the gift of public funds rationale for prohibiting such an application of a statute enunciated in *Estate of Skinker, supra,* 47 Cal.2d 290, 296-297.

Finally, we think the elements of control of the pension and profit sharing plans here under consideration, i.e., Arthur having the ability to terminate them or change the amount of their contents, make this case distinguishable from the large corporate plan involved in *Allen* where neither spouse had any substantial control of the existence or operation of the pension plan.

### DISPOSITION

Order reversed with directions to refix the inheritance tax by taking into account Kathleen's one-half interest in the pension and profit sharing plans pursuant to Revenue and Taxation Code section 13551.

Kremer, P. J., and Staniforth, J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.