[No. A049096. First Dist., Div. Four. Jan. 15, 1992.]

In re the Marriage of DOREEN and MORTON COLVIN.
DOREEN G. COLVIN, Respondent, v.
MORTON R. COLVIN, Appellant.

## COUNSEL

Misciagna & Colombalto, N.A. Misciagna and Elizabeth A. Kreher for Appellant.

Jane A. Zack, Deputy Attorney General, Bernard N. Wolf, Spolter, McDonald & Mannion and Brian McDonald for Respondent.

## OPINION

ANDERSON, P. J.—Section 4800.8 of the Civil Code, enacted in 1986, broadly empowers the trial court to make whatever orders are necessary to ensure that each spouse receives his or her full community property share of any retirement plan, be it public or private.[1] This appeal concerns the scope of the court's discretion under section 4800.8 to allocate the community interest in a judicial pension plan where it previously divided the asset but reserved jurisdiction to supervise payments upon actual retirement.

Appellant, now-retired Judge Morton R. Colvin, urges that the trial court erred to his prejudice by refusing to allocate the community interest in his plan according to the method set forth in recent amendments to the Judges' Retirement Law.[2] Resort to this method would have reduced the monthly benefits available to his former spouse, respondent Doreen Glicksberg Colvin (Glicksberg) by roughly $681, while simultaneously increasing Colvin's benefits by approximately $355 per month. Instead, the court (1)

---

[1]Civil Code section 4800.8 (hereafter section 4800.8) reads: "The court shall make whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in any retirement plan, whether public or private, including all survivor and death benefits, including, but not limited to, any of the following: [¶] (a) Order the division of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 4800. [¶] (b) Order a party to elect a survivor benefit annuity or other similar election for the benefit of the other party, as specified by the court, in any case in which a retirement plan provides for such an election. [¶] (c) Order the division of accumulated community property contributions and service credit [in the Public Employees' Retirement System (PERS)] as provided in Article 1.2 (commencing with Section 21215) of Chapter 9 of Part 3 of Division 5 of Title 2 of the Government Code. [¶] (d) Order the division of community property rights in accounts with the State Teachers' Retirement System [STRS] pursuant to Chapter 7.5 (commencing with Section 22650) of Part 13 of the Education Code."

[2]Government Code section 75000 et seq. (JRL).

enforced an earlier order which divided the benefits under the "time rule" and (2) additionally granted Glicksberg a portion of any survivor benefits available after Colvin's death. We conclude the trial court properly exercised its discretion under section 4800.8 and affirm.

## I. BACKGROUND

During the marriage Colvin received an appointment to the superior court and became a member of the Judges' Retirement Plan. The couple separated in 1978 after 26 years of marriage. At that time Colvin asked the court to retain jurisdiction over his retirement plan and distribute pension benefits at maturity according to the parties' community and separate contributions.[3]

In May 1979 the court entered a stipulated order which awarded petitioner Glicksberg the following: "One-half of community interest in Respondent's Judges Retirement Plan. Respondent was appointed to the Superior Court on November 30, 1970. The parties separated on March 17, 1978. The community interest is determined to be .36486.[4] [¶] The Court reserves jurisdiction to ascertain the amount of the community interest at the time of Respondent's retirement and to award Petitioner a one-half interest in the community portion of the payments as they become due." There is no mention in the 1979 order of any entitlement to survivor benefits should Colvin predecease Glicksberg. Under the "terminable interest" rule prevailing at that time, the nonemployee spouse's interest in a pension plan terminated with the earlier of his or her own death or the pensioner's death. (See *Waite v. Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13]; *Benson v. City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649].)

In December of 1989 PERS[5] filed a notice of appearance and response in the matter, indicating it had placed a hold on Colvin's retirement account pending determination of the parties' community interests. Colvin then obtained an order to show cause for valuation and division of the pension, specifying in his papers that he intended to retire on February 28, 1990. He

---

[3]In his 1979 trial brief, which Colvin now alleges he merely furnished to opposing counsel but never filed in court, Colvin articulated his position as being consistent with the "time rule." This rule allocates to the community a fraction of the pension benefits, the numerator representing the length of service during marriage but prior to separation, with the denominator representing the employee-spouse's creditable service. (*In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 522 [137 Cal.Rptr. 318].)

[4]This is the exact percentage set forth in a letter of February 1979 from a consulting actuary to Colvin's attorney. The actuary arrived at .36486 by applying the "time rule," i.e., years married while employed (7.2972) divided by an estimated 20 years of service.

[5]PERS, through its board of administration, administers the Judges' Retirement System (JRS). (Gov. Code, § 75005.)

argued that the recent JRL amendments dictated the exclusive manner of dividing the community interest.

Glicksberg opposed this change, requesting confirmation of the 1979 order and her share of survivor benefits. She submitted the declaration of actuary George McCauslan who stated that the method of division set forth in the JRL amendments and espoused by Colvin would provide Glicksberg a "significantly lower value than the benefit that she would receive if the Court were to continue the existing Order [pursuant to Section 4800.8(a) of the Civil Code] that she receive her one-half of the community share of each payment that is payable by the System to, or on behalf of the service of, Respondent." (Brackets in original.)

At the hearing the court explained that unless Glicksberg specifically elected to receive benefits under the new JRL amendments, it had to honor the 1979 order and apply the time rule. Thereafter, the court adjusted the community interest fraction to account for Colvin's actual retirement some seven months sooner than anticipated and directed PERS to pay Glicksberg or her beneficiary 18.96 percent[6] of each payment due to, or on behalf of, Colvin's service.

## II. Statutory Framework

When the Legislature added section 4800.8 to the Family Law Act, it expressed its intention "to abolish the terminable interest rule . . . in order that retirement benefits shall be divided in accordance with Section 4800." (Stats. 1986, ch. 686, § 2, p. 2313.) This court has held that section 4800.8, as originally enacted, applies to all cases not finally decided as of its January 1, 1987, operative date. (*In re Marriage of Taylor* (1987) 189 Cal.App.3d 435, 440-443 [234 Cal.Rptr. 486].) We determined such retroactive application would not result in an unconstitutional impairment of vested property rights because the statute was designed to cure injustices in the former law and to promote the state interest in equitable division of community property. (*Id.* at p. 443.)

The 1988 amendments to section 4800.8 added subdivisions (c) and (d) concerning PERS and STRS benefits. The Legislature expressly made these provisions applicable to all cases in which the court had reserved jurisdiction over the benefit. (Stats. 1988, ch. 542, §§ 8 and 9, pp. 1999-2000.) Of

---

[6]The community share is 37.92 percent, i.e., 7.30 years of service credit during marriage divided by 19.25 years of total service. Based on an annual benefit of $67,465 (72.1978 percent of $93,445 [Colvin's salary at retirement]), Glicksberg's one-half of the community share amounts to $12,791.36 per year or $1,065.95 per month.

interest in this case is subdivision (c) which permits the court to divide the community rights in PERS accounts by awarding the "nonmember" spouse a separate account reflecting specific credited service and accumulated contributions. (See Gov. Code, § 21215 et seq.)

Then in 1989 the Legislature added provisions to the JRL which are similar to the PERS provisions referenced in section 4800.8, subdivision (c). It likewise expressed its intent that these amendments would apply to all cases in which the court had reserved jurisdiction over the retirement plan. (Stats. 1989, ch. 1379, §§ 6, 7.)

Under the JRL amendments, *if* the court divides the community property pursuant to section 4800.8, subdivision (c), it "shall order that the accumulated contributions and service credit attributable to periods of service during the marriage be divided into two separate and distinct accounts in the name of the member and nonmember, respectively."[7] (Gov. Code, § 75050, subd. (b).) Upon being awarded a separate account, the nonmember may choose a refund of accumulated contributions or a retirement allowance based on service years which the judge accrued during marriage and in keeping with the community property settlement. (Gov. Code, §§ 75052, 75058.) The retirement allowance percentage is calculated at the rate of 3.75 percent multiplied by the number of service years specified in the court order, reduced by .25 percent for each year less than 12 years. (Gov. Code, § 75058.) The actual allowance is derived by applying this percentage to the judge's salary at the date of separation. (See Gov. Code, § 75057.)[8]

A nonmember can "apply" for "retirement" and will be deemed retired if both the member and nonmember are at least 60 years old and on the date of dissolution or separation the member has sufficient credited service and met other eligibility requirements to retire under one of the statutory provisions. (Gov. Code, § 75055.) The nonmember's retirement allowance begins to accrue on the latter of the date designated in the application or the date following the court's division of the property. (Gov. Code, § 75056.)

---

[7]We realize that Government Code section 75050 is confusing because it references a method of dividing property—namely, that set forth in section 4800.8, subdivision (c)—which itself incorporates specific methods pertaining solely to PERS, not JRS, pension plans. For consistency's sake, the Legislature should have added another subsection to 4800.8 providing for division of contributions and credits as provided in article 2.5 (commencing with § 75050) of chapter 11 of title 8 of the Government Code.

[8]Under these rules, Glicksberg's retirement allowance would be 9.399 percent of $49,166 (Colvin's annual salary at separation)—$4,621 annually or $385.05 per month. (12 years - 7.3 service years = 4.7; 4.7 × .25% = 1.175%; 3.750% - 1.175% = 2.575%; 2.575% × 7.3 service years = 18.798%; 18.798% divided by 2 = 9.399%; $49,166 × .09399 = $4,621.)

III. DISCUSSION

 Colvin agrees that section 4800.8 applies retroactively to this case, but insists that because the court reserved jurisdiction over the pension in 1979, the JRL amendments also apply retroactively. This being the case, he argues the court had but one choice, and that was to proceed under section 4800.8, subdivision (c), which in turn directs the court to the JRL amendments calling for establishment of separate accounts. With a separate account, Glicksberg would be entitled to a refund of approximately $11,671 in accumulated contributions or a retirement allowance of $385.08 per month for her life (see fn. 8, *ante*). On the other hand, with the court's "time rule" order, Glicksberg receives $1,065.95 per month (see fn. 6, *ante*) while Colvin's benefit is $355.39 less than if Glicksberg had opted for a JRL retirement allowance. We conclude the trial court properly entered an order consistent with the 1979 order and section 4800.8, subdivision (a).

A. *Reservation of Jurisdiction; Retroactivity*

Central to Colvin's position is the alleged primacy of the Legislature's stated intent that the JRL amendments apply in all cases "in which the court has reserved jurisdiction over the benefit." (Stats. 1989 ch. 1379, § 6, p. 5119.) He asserts that in 1979 the trial court reserved jurisdiction over his pension and in view of his present retirement, it must now specifically apply the new statutes to divide the asset. We disagree.

First, the 1979 reservation clause is not open-ended. The court employed a specific formula to divide the pension plan and then retained a limited, supervisorial authority to (1) modify the precise percentage of the community interest to coincide with Colvin's actual retirement date and (2) oversee allocation of payments. Indeed, courts cannot reserve jurisdiction indefinitely to divide the community interest in a pension fund after the conclusion of the dissolution proceedings, but they can reserve jurisdiction to supervise payments at a later date. (*In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 755-758 [214 Cal.Rptr. 661].)

 Second, given such a limited reservation of jurisdiction, Colvin cannot now urge relitigating the pension division and undoing the 1979 order, all to Glicksberg's detriment and all in the guise of lawful, retroactive application of the JRL amendments. Despite pronouncements of legislative intent to the contrary, statutes affecting community property rights will not operate retroactively unless they are also designed to cure a "rank injustice" endemic in the former scheme of things. (See *In re Marriage of Taylor, supra*, 189 Cal.App.3d at pp. 442-443, citing *In re Marriage of Buol*

(1985) 39 Cal.3d 751 [218 Cal.Rptr. 31, 705 P.2d 354] and *In re Marriage of Fabian* (1986) 41 Cal.3d 440 [224 Cal.Rptr. 333, 715 P.2d 253].) ██ Nothing in the legislative history of the JRL amendments indicates they were intended to cure any injustice *to the judge or retired judge,* nor can we perceive any injustice to Colvin under the extant order. He gets approximately $355 less than he would under the new scheme, but he advocated the original division, stipulated to it, and presumably received his share of other community assets based on that division. Moreover, the benefits under the new scheme, which according to the facts of a given case might be available to a nonmember at the time of separation or dissolution, obviously were not available to Glicksberg in 1979; she should not be forced, 12 years later, to accept their diluted application to her cause.

The trial court reached this same conclusion on a somewhat different theory, reasoning that it could not apply the JRL amendments unless Glicksberg "elected" to receive benefits or contributions under the new scheme. Colvin argues that this analysis is defective because there is no statutory language or other authority granting a former spouse that right. Again, we disagree.

It is clear from the amendments themselves that it is the spouse or former spouse, not the judge or retired judge, who must petition the court for a separation of accounts. Government Code section 75051 defines "nonmember" as the member's spouse or former spouse "who *as a result of petitioning the court for the division of community property,* has been awarded a distinct and separate account reflecting specific credited service and accumulated contributions." (Italics added.) The obvious import of this language is that it is the spouse's or former spouse's choice whether or not to seek a separation of accounts and the attendant rights flowing therefrom. This makes sense because there are advantages and disadvantages to proceeding with this method which the nonmember would have to evaluate. On the one hand, with a separation of accounts the nonemployee spouse does not have to rely on the member for the type of benefit or timing of its payment. On the other hand, the nonemployee spouse will not share in the increased value of the member's account because the salary and benefit structure are "frozen" at the time of separation.

B. *Section 4800.8, Subdivision (c), and the JRL
Amendments Are Discretionary*

██ Colvin also asserts by implication that the JRL amendments constrain the family law court's broad discretion to fashion an equitable division of pension plans under section 4800.8. This theory is faulty for several reasons.

First, section 4800.8 sets forth by way of illustration four methods of dividing retirement benefits. Beyond these four, the court still has power to choose another method so long as it would result in an equitable division of the asset. The ordering of separate accounts for accumulated community property contributions and service credits pursuant to section 4800.8, subdivision (c), which would give a nonmember spouse the right to choose a lump sum payment or a retirement allowance under the JRL amendments, is but *one* choice available to the court.

Second, contrary to the thrust of Colvin's arguments, the JRL amendments themselves take into account the trial court's discretion under section 4800.8. Specifically, Government Code section 75050 provides a mechanism for segregating contributions and credits into separate accounts *if* the court so orders pursuant to section 4800.8, subdivision (c). The very wording of this statute implies that some former spouses will seek their own account and retirement allowance or lump sum payment under the JRL amendments, while others will seek another type of division. This construction does not conflict with the legislative intent that the amendments apply retroactively whenever the court has retained jurisdiction over the pension. We have no quarrel that the amendments apply as a general matter. However, they apply according to their plain language which recognizes that the division of accumulated community property contributions and service credit with the attendant ordering of separate accounts is but one alternative accorded the court under section 4800.8, to be employed as necessary or appropriate in a particular case to ensure a fair and equal division of the pension asset.

Third, even if we were to conclude the JRL amendments were ambiguous, any construction of the amendments which would result in divesting the court of discretion to tailor division of a judge's pension plan according to the circumstances of a given case would be unreasonable. The JRL amendments and section 4800.8 both pertain to dividing community interests in pension plans. ■ Our principles of statutory construction teach us that statutes should be construed in harmony with other statutes covering the same general subject, even when interpreting provisions in different codes. (*Building Material & Construction Teamsters' Union* v. *Farrell* (1986) 41 Cal.3d 651, 665 [224 Cal.Rptr. 688, 715 P.2d 648]; see Code Civ. Proc., § 1858.) ■ Assuming ambiguity, our mandate would be to read the two acts together and reconcile apparent conflicts by choosing a construction which honors the broad discretion which section 4800.8 confers upon the trial court.

Fourth, our understanding of the JRL amendments and section 4800.8, subdivision (c), is consistent with its application by PERS, the administrator

of the JRS. Israel Valdez, the PERS officer responsible for administering Colvin's benefits, stated in declaration: "Since the recent amendments, PERS has reviewed orders and made payments to the nonmember under the [JRS] pursuant to the 'time rule' that is contained in the [1979] order filed in this case." Additionally, the Attorney General on behalf of PERS has submitted a letter in this case articulating the PERS position that section 4800.8, subdivision (c) (and the JRL amendments set forth), is but "one of the several alternative methods of dividing the community property interest in a Judges' Retirement Account which may be ordered by the court."

■ Courts generally respect administrative interpretations of a law and, unless clearly erroneous, consider them significant in ascertaining statutory meaning and purpose. (*Nipper* v. *California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 [136 Cal.Rptr. 854, 560 P.2d 743].) ■ The PERS interpretation is reasonable and bolsters our conclusion that the trial court had discretion to enforce the "time rule" division and award Glicksberg her community share of any payments due to Colvin's surviving spouse or other beneficiary after his death and on account of his service.

### C. *The Award of Survivor Benefits and Provision for Glicksberg's Beneficiary Were Proper*

■ The trial court specifically ordered that PERS pay Glicksberg "18.96% of each payment made after . . . Colvin's death to a surviving spouse or other beneficiary on account of . . . Colvin's service under the system." It further provided that if any payments were due Colvin or his surviving spouse or other beneficiary after Glickberg's death, PERS would pay her 18.96 percent share to her estate or beneficiary. These were lawful orders made pursuant to retroactive application of section 4800.8, subdivision (a). Such retroactive treatment restored Glicksberg's rightful share of the community asset, unjustly denied her under the 1979 order and the terminable interest rule in effect at that time.

As explained in the recent case of *In re Marriage of Carnall* (1989) 216 Cal.App.3d 1010 [265 Cal.Rptr. 271], section 4800.8 mandates that the nonemployee spouse receive his or her full and fair community share of survivor and death benefits, consistent with the limits and rules applicable to a given pension plan. There, the trial court ordered the county employee retirement association to designate wife as husband's "surviving spouse," thereby entitling her to 60 percent of husband's retirement allowance after death if certain conditions of the county employees retirement law were met. The reviewing court held this designation improperly reformed the pension contract to the detriment of the plan and other third parties, giving the former wife more than her share of the community interest in the plan.

Nevertheless, the court must still provide an avenue under section 4800.8 to ensure that she will receive her community interest in survivor benefits; an order specifying that this share be paid directly to the former wife or her estate when such benefits become due and payable under the plan is one way to accomplish this result. (*Id.*, at pp. 1022-1025.)

The order here is consistent with the reasoning of *Carnall*, and does not give Glicksberg more than her share of benefits.

### D. *Appellate Attorney Fees*

 Glicksberg also requests that we remand the cause to the trial court for the limited purpose of determining her right to appellate attorney fees under Civil Code section 4370 (hereafter section 4370). We take judicial notice of appeal No. A052185 wherein Colvin appeals the $11,000 award of fees to Glicksberg for defending the entire pension fund proceeding, including the appeal. She had asked for a total of $20,000 in fees.

Glicksberg's failure to appeal that order on the basis that the amount was so low it represented an abuse of discretion does not prejudice her current request. That order was made pendente lite. Section 4370 gives the trial court broad authority to make attorney fee awards in family law cases during the entire pendency of a case, and to modify or augment such awards after an appeal has been concluded. In particular, it provides: "From time to time and before entry of judgment, *the court may augment or modify the original award* for costs and attorney's fees as may be reasonably necessary for the prosecution or defense of the proceeding or any proceeding related thereto, *including after any appeal has been concluded.* In respect to services rendered or costs incurred after the entry of judgment, the court may award such costs and attorney's fees as may be reasonably necessary to maintain or defend any subsequent proceeding, *and may augment or modify any award so made, including after any appeal has been concluded. . . ."* (Italics added.)

Because the attorney fee appeal, which calls into question Glicksberg's entitlement to any award, is now pending before us, a remand to consider awarding additional fees on appeal could engender additional litigation on this issue. In any event, a remand order is unnecesary because section 4370 gives the trial court power to make such an award without our direction. Nonetheless, our decision in appeal No. A052185 will be law of the case on Glicksberg's entitlement to any fees, and we therefore direct the trial court to refrain from acting on any attorney fee request until the remittitur has been filed in that case.

We affirm the judgment.

Poché, J., and Perley, J., concurred.