[No. G034108. Fourth Dist., Div. Three. Mar. 24, 2005.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA et al., Plaintiffs and Respondents, v.
MARK G. BENFORD, as Executor and Personal Representative, etc., et al., Defendants and Appellants.

**COUNSEL**

Aprahamian & Aprahamian and Michael T. Aprahamian for Defendants and Appellants.

O'Melveny & Myers, Linda J. Smith, Wayne S. Jacobsen, Brent J. North and Warren F. Fox for Plaintiffs and Respondents.

Peter H. Mison, Carol A. McConnell and Richard B. Maness for California Public Employees' Retirement System as Amicus Curiae on behalf of Plaintiffs and Respondents.

Christopher W. Waddell for California State Teachers' Retirement System as Amicus Curiae of behalf of Plaintiffs and Respondents.

OPINION

**ARONSON, J.**—The Regents of the University of California (Regents) and various pension plans administered by them filed a complaint seeking a declaration that certain antialienation provisions in these pension plans prohibit a nonemployee spouse who predeceases the working spouse from bequeathing his or her community property interest in the plans. The trial court entered summary judgment against defendants, the executor of decedent's estate and decedent's children, ruling the antialienation provisions as a matter of law prevent defendants from obtaining an interest in the plans. Defendants appeal the judgment, contending Family Code sections 1100 and 2610[1] prohibit termination of decedent's interests in the plans on her death. Defendants further contend sections 1100 and 2610 take precedence over contrary regulations adopted by the Regents despite the grant of autonomy provided under the California Constitution, because the statute was enacted under the Legislature's general police powers, addressed a matter of statewide concern, and did not pertain solely to internal university affairs. (See Cal. Const., art. IX, § 9.)

■ We disagree with defendants because the antialienation provisions do not operate as a gift of community property under section 1100 and section 2610 is inapplicable when the nonemployee spouse dies before the property has been divided in a divorce or legal separation. Because the regulations do not conflict with either of the two sections, we do not address any issue concerning the scope of the Regents' constitutional autonomy. Accordingly, we affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Decedent, Joan A. Benford, was married to G. Benford from August 1967 until her death in March 2002, and resided continuously in California during the marriage. In December 1967, the University of California hired G. Benford as a professor, a position he occupied at the time of the lawsuit. After being hired, G. Benford participated in the University of California Retirement Plan (UCRP), Tax Deferred 403(b) Plan (403(b) Plan), and a Defined Contribution Plan (DC Plan) (collectively, the UC Plans). In 1997, decedent and G. Benford commenced marital dissolution proceedings. Decedent's dissolution attorney on two occasions obtained information from the UC Plans concerning the value of G. Benford's benefits to use in obtaining a qualified domestic relations order (QDRO) dividing the couple's community

---

[1] All further statutory references are to the Family Code, unless otherwise indicated.

property interests in the plans. No QDRO, however, was ever obtained. At the time of decedent's death in 2002, the dissolution proceedings were not finalized and no decree of legal separation or divorce had been entered. In various testamentary instruments, decedent purported to bequeath her community property interest in the UC Plans to the Joan A. Benford Trust, of which the sole beneficiaries are Mark G. Benford and Alyson R. Benford, children from her marriage to G. Benford. Defendants Joan Benford and Mark G. Benford, the latter in his personal capacity and as executor and personal representative of decedent's estate, filed a petition for an assignment of these interests under Probate Code section 850 in a separate probate proceeding.

Plaintiffs, the Regents and the UC Plans, filed a complaint against defendants seeking a declaration that the antialienation provisions in the UC Plans preclude payment of any benefits to defendants. The trial court granted plaintiffs' motion for summary judgment and defendants now appeal.

## STANDARD OF REVIEW

We review a trial court's grant of summary judgment de novo. (*Romero v. American President Lines, Ltd.* (1995) 38 Cal.App.4th 1199, 1202 [45 Cal.Rptr.2d 421].) Defendants do not contend there exist any disputed issues of material fact, but argue the trial court erred in ruling, as a matter of law, the antialienation provisions of the UC Plans prevent the transfer of decedent's community property interest in the plans.

## II

## DISCUSSION

*The California Constitution Grants Broad Autonomy to the University of California*

The parties view this case as a clash between two venerable legal policies. The first, championed by plaintiffs, is that "[p]ensions are designed for the benefit of the living[,] . . . to ensure that both spouses would receive sufficient funds to afford them security during their lifetimes, not to arrange for an opportunity for a predeceasing non-employee spouse to leave a part of her surviving husband's pension rights to others." (*Ablamis v. Roper* (9th Cir. 1991) 937 F.2d 1450, 1457 (*Ablamis*).) The second, urged by defendants, is that termination of a nonemployee spouse's pension plan interests upon death represents "a windfall profit to the employee spouse and his or her new spouse." (*In re Marriage of Powers* (1990) 218 Cal.App.3d 626, 636 [267 Cal.Rptr. 350] (*Powers*).) Our task, however, is not to weigh the respective

wisdom of these competing policies, nor decide how legislators should have implemented them. (*Willis v. State of California* (1994) 22 Cal.App.4th 287, 293 [27 Cal.Rptr.2d 413] ["it remains a legislative, and not a judicial, prerogative to assess the competing interests and to determine public policy"].) We therefore content ourselves to interpreting the laws enacted in light of these policies given the undisputed facts at issue.

We begin our analysis with the pertinent provisions of the UC Plans. Section 12.06 of the UCRP states: "No benefit payable from the Fund to any person (including a Member or beneficiary) shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any attempt to anticipate, alienate, sell, transfer, assign, pledge, encumber, or charge the same shall be void; and no such benefit shall in any manner be liable for, or subject to, the debts, contracts, liabilities, engagements, or torts of any such person, nor shall it be subject to attachment or legal process for or against such person, except to such extent as may be required by law." Similar provisions are found in the other two plaintiff UC Plans. The UC Plans, however, provide an exception to the antialienation provisions "in the case of any property settlements upon marital dissolution or legal separation which are made in accordance with a qualified domestic relations order (QDRO) issued in accordance with state domestic relations law."

Defendants do not dispute these provisions purport to prevent decedent's testamentary transfer of her community property interest in the UC Plans. Rather, defendants contend the UC Plans conflict with California statutes providing for the testamentary disposition of decedent's community property interests in the UC Plans, and must yield to those statutes.

■ "The California constitution grants broad autonomy to the University, subject to limited legislative interference." (*Tafoya v. Hastings College* (1987) 191 Cal.App.3d 437, 442 [236 Cal.Rptr. 395].) " 'Under article IX, section 9, of the California Constitution the University constitutes "a public trust" possessing "full powers of organization and government" and "all the powers necessary or convenient for the effective administration of its trust. . . ." "The Regents have the general rule-making or policy-making power in regard to the University [citation], and are (with exceptions not material here) fully empowered with respect to the organization and government of the University . . . ." [Citation.] "As a consequence, policies established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes . . . ." ' " (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848, fn. 2 [41 Cal.Rptr.2d 567].) Thus, the UC Plan provisions have the force of law. (See *id.* at pp. 848–849.)

■ This broad grant of autonomy, however, is not boundless. "In addition to specific provisions set forth in article IX, section 9, cases have recognized three general areas in which the Legislature's own extensive powers may limit University autonomy: authority over the appropriation of state monies [citations]; exercise of the general police power to provide for the public health, safety, and welfare [citations]; and legislation on matters of 'general statewide concern.' " (*Coutin v. Lucas* (1990) 220 Cal.App.3d 1016, 1025 [270 Cal.Rptr. 93].)

*The UC Plans Do Not Conflict with Family Code Section 2610 in the Present Case.*

Defendants principally argue the UC Plans directly conflict with section 2610, and assert section 2610 controls because it was enacted under the Legislature's general police powers and addresses a "matter of statewide concern." Section 2610, subdivision (a), provides, in relevant part: "Except as provided in subdivision (b), the court shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits, including, but not limited to, any of the following: [¶] (1) Order the disposition of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 2550." To fully understand the purpose and import of section 2610, it is necessary to briefly review the history of the "terminable interest rule" in California.

The terminable interest rule arose from two cases, *Benson v. City of Los Angeles* (1963) 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649], and *Waite v. Waite* (1972) 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13]. " 'Briefly stated, this judicially created rule recognize[d] that an interest in a retirement plan traceable to contributions of community funds or to community labor consti- tutes community property; however, the interest of the nonparticipant spouse does not extend to benefits payable after the death of either spouse.' [Citation.] There were two distinct aspects to the rule. ' "[T]he first aspect . . . postulates that the community interest in accrued benefits does not extend to pension benefits payable following the death of the employee spouse. Thus, the nonemployee spouse may not claim pension benefits earned or accrued during marriage if the employee spouse designates a third party to receive them after his death. . . . [¶] A second aspect of the Terminable Interest Doctrine postulates that the nonemployee spouse's interest in pension benefits terminates upon the death of the nonemployee spouse, so that the nonem- ployee spouse may not bequeath these benefits by will. . . ." [Citation.]' " (*Powers, supra,* 218 Cal.App. 3d at p. 635.) The terminable interest rule was subject to considerable criticism by both the courts and academia. (*In re*

*Marriage of Taylor* (1987) 189 Cal.App.3d 435, 440 [234 Cal.Rptr. 486].) As *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642 [115 Cal.Rptr. 184] observed: "We do not believe the rule which we must follow is fair. [Fn. omitted.] [Husband's] pension rights constitute a bundle to which [wife], as a partner in the community during the years of marriage contributed her equal share. Why should she be deprived of her right to any single stick in the bundle? [Citation.]" (*Id.* at p. 656.)

In response to the criticism generated by the terminable interest rule, the Legislature enacted Civil Code section 4800.8, which has subsequently been recodified as section 2610. In an uncodified section of the statute, the Legislature expressed its intent " 'to abolish the terminable interest rule set forth in *Waite v. Waite,* 6 Cal.3d 461 [99 Cal.Rptr. 325, 492 P.2d 13], and *Benson v. City of Los Angeles,* 60 Cal.2d 355 [33 Cal.Rptr. 257, 384 P.2d 649], in order that retirement benefits shall be divided in accordance with Section 4800.' (Stats. 1986, ch. 686, § 2.)" (*Powers, supra,* 218 Cal.App.3d at p. 636.)

■ Plaintiffs do not dispute section 2610 was intended to abrogate the terminable interest doctrine, but contend the statute applies only in situations where the court is dividing community property in a marital dissolution or legal separation. Because decedent in the present situation never completed her planned divorce, obtained a legal separation, nor obtained a QDRO before her death, plaintiffs assert section 2610 is inapplicable and therefore does not conflict with the UC Plans. We agree.

■ Section 2610 resides in title 7 of the Family Code, which governs the division of property upon a divorce or legal separation. As set forth above, the statute ensures that "each *party* receives the *party's* full community property share in any retirement plan." (Italics added.) Logically, the word "party" in section 2610 refers to the parties in a dissolution or separation proceeding. Moreover, the Legislature's express purpose in enacting the statute was, as noted above, to ensure that retirement benefits "be divided in accordance with Section 4800." Section 4800 is now recodified as section 2550, which is expressly referenced in section 2610, subdivision (a). Section 2550 provides: "[*I*]*n a proceeding for dissolution of marriage or for legal separation* of the parties, the court shall, either in its *judgment of dissolution* of the marriage, in its *judgment of legal separation* of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally." (Italics added.) It is undisputed that in decedent's 1997 divorce proceeding the court never entered a judgment of dissolution, judgment of legal separation, or reserved jurisdiction.

Arguing a broader statutory application, defendants cite a legal treatise for the proposition "under California law if the nonemployee spouse dies before the employee spouse, his or her community property interest in the employee spouse's pension plan becomes part of the nonemployee spouse's estate." (1 Cal. Probate Practice (Matthew Bender 2003) Transfer Without Administration, § 4.12[1][a][II], p. 4-60 (rel. 11-5/00).) Defendants' reliance upon this treatise is unavailing.

In support of the foregoing proposition, the treatise cites *Powers, supra,* 218 Cal.App.3d 626, and *Estate of Austin* (1988) 206 Cal.App.3d 1249 [254 Cal.Rptr. 372] (*Austin*).) *Powers* declared section 2610 "protect[s] the nonemployee's interest in the employee spouse's pension plan upon the death of either spouse," (*Powers,* at p. 639), but as the treatise observed, this broad statement is merely dictum. In *Powers,* the marriage had been dissolved under a judgment expressly reserving jurisdiction in the family court to enter further orders regarding the division of community property—all as contemplated by section 2610. (*Id.* at pp. 639–640.)

In *Austin,* the probate court applied the terminable interest rule to exclude the decedent's community property interest in her husband's pension and profit-sharing plans in determining the husband's inheritance tax after receiving her interest. The appellate court in *Austin* reversed, holding the abolition of the terminable interest rule by the predecessor to section 2610 required the husband to be taxed upon receipt of his wife's community property interest in the plans. (*Austin, supra,* 206 Cal.App.3d at p. 1255.) Although *Austin* did not involve a marital dissolution or separation proceeding, it also did not involve a testamentary disposition of pension plan benefits to a third party. Neither the treatise nor defendants cite any cases holding a predeceasing spouse may bequeath an interest in a surviving spouse's retirement plan to a third party. (See *Ablamis, supra,* 937 F.2d at p. 1455 fn. 8 [noting lack of controlling case authority on this subject].)

■ *Powers* and *Austin* are distinguishable for another reason: neither addressed whether the plan provisions—here tantamount to a state statute—prevented the alienation of benefits. The absence of case law on this subject lead another treatise to tentatively observe: "[A]s a matter of state community property law, the [nonworking spouse's community property] interest is inheritable and *theoretically* subject to testamentary disposition (*absent a contract provision or beneficiary designation to the contrary*)." (Ross & Moore, Jr., Cal. Practice Guide: Probate (The Rutter Group 2004) § 6:45.1, p. 6-20, italics added.)

None of the other legal authorities cited by defendants address the present situation. For example, although no division of community property through

divorce or legal separation was involved in *Estate of MacDonald* (1990) 51 Cal.3d 262 [272 Cal.Rptr. 153, 794 P.2d 911], the Supreme Court noted that the Court of Appeal's refusal to apply the terminable interest rule was not challenged in the petition for review, and therefore the Supreme Court did not address the issue. (*Id.* at p. 266.) *Phillipson v. Board of Administration* (1970) 3 Cal.3d 32 [89 Cal.Rptr. 61, 473 P.2d 765] held that a court's divorce decree awarding a nonemployee spouse a portion of her husband's retirement benefits did not violate statutory antialienation provisions. The case did not address whether the antialienation provisions would have prevented the nonemployee spouse from bequeathing her interest in the pension absent a divorce decree dividing community assets.

Our determination that the antialienation provisions of the UC Plans do not conflict with section 2610 is consistent with Congress's policies underlying its handling of private pension plans, and the Legislature's enactments concerning state pension plans. Under the antiassignment provisions of the Employment Retirement Income Security Act (ERISA), title 29 of the United States Code section 1001 et seq., a nonemployee spouse is precluded from bequeathing his or her interest in the employee spouse's private retirement plan. (29 U.S.C. § 1056(d)(1); *Boggs v. Boggs* (1997) 520 U.S. 833, 851 [138 L.Ed.2d 45, 117 S.Ct. 1754].) To protect the nonemployee spouse from losing his or her interest due to divorce or legal separation, however, ERISA provides an exception where a QDRO is obtained. (29 U.S.C. § 1056(d)(3)(A).)

Similarly, the California Legislature has enacted antialienation provisions in the Public Employees' Retirement Systems (PERS) and the State Teachers' Retirement System, with exceptions where a QDRO has been obtained. (See Gov. Code, §§ 21255, 21290; Ed. Code, §§ 22006, 22652.) These state and federal laws harmonize two conflicting policies that preserve retirement benefits for the living, but also ensure a nonemployee spouse is not deprived of his or her community property interests upon divorce or legal separation.

Defendants contend the UC Plan provisions allowing testamentary disposition of pension plan benefits only where a QDRO is obtained runs counter to public policy because it may encourage divorce or legal separation. Although this may be true in some instances, the preservation of pension benefits for the employee spouse where no QDRO is obtained may well encourage the employee spouse to preserve the marriage when divorce or separation is contemplated. Again, we must follow the policy decisions adopted by the UC Regents and the Legislature. "The inequity, if any, lies in the operation of a statute we are powerless to rewrite." (*Wilshire Ins. Co., Inc. v. Sentry Select Ins. Co.* (2004) 124 Cal.App.4th 27, 37 [21 Cal.Rptr.3d 60].)

*The UC Plans Do Not Conflict with Section 1100, Subdivision (b)*

Defendants also contend the UC Plans conflict with section 1100, subdivision (b), which provides: "A spouse may not make a gift of community personal property, or dispose of community personal property for less than fair and reasonable value, without the written consent of the other spouse." Defendants note the 403(b) Plan and DC Plan were funded with contributions of community assets. Because the antialienation provisions of the UC Plans prevent decedent from exercising her rights of testamentary disposition over those funds, they facilitate G. Benford's gift of community funds to himself. In support, defendants cite *Chirmside v. Board of Administration* (1983) 143 Cal.App.3d 205 [191 Cal.Rptr. 605] (*Chirmside*).

In *Chirmiside,* decedent and his former wife obtained a divorce, but the court failed to divide the decedent's PERS retirement plan account. Decedent had opted to take monthly payments from the account and had designated his sister to receive the remainder of the account upon his death. When decedent died, his former wife sought to obtain a one-half interest in the account. In agreeing with the former wife, the court refused to apply the terminable interest rule because the money in the retirement account consisted entirely of voluntary contributions and was therefore community property. Consequently, the court ruled that decedent's designation of his sister as beneficiary violated these antigift provisions of what is now section 1100, subdivision (b). Although the Government Code provisions governing the plan permitted a beneficiary designation to a third party, the court granted the former wife her share of the account, concluding "these antigift statutes deprive an employee of the power to designate a beneficiary of community property pension benefits other than the nonemployee spouse." (*Chirmside, supra,* 143 Cal.App.3d at p. 212.)

The present situation is distinguishable. The antialienation provisions in the present situation operate automatically, and do not arise from a designation by G. Benford. Hence, there is no gift at all, and section 1100, subdivision (b)'s prohibition on giving away community property is inapplicable in the present case.

Because we conclude there exists no conflict between the provisions of the UC Plans and the state statutes cited by defendants, we need not consider whether the UC Plans are subject to legislative restriction.

## III

## DISPOSITION

The judgment is affirmed.

O'Leary, Acting P. J., and Ikola, J., concurred.

On April 25, 2005, the opinion was modified to read as printed above.