Filed 9/30/14  Marriage of Steed CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re Marriage of SHARRON STEED and JAMES STEED. | |
| CANDICE STEED,<br><br>        Respondent,<br><br>                v.<br><br>JAMES STEED,<br><br>        Appellant. | F067971<br><br>(Super. Ct. Nos. S-1500-FL-564450 & S-1501-PB-61004)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  James L. Compton, Commissioner.

Klein, DeNatale, Goldner, Cooper, Rosenlieb & Kimball, Joseph D. Hughes, Catherine E. Bennett, and Kurt D. Van Sciver for Appellant.

Clifford & Brown, John R. Szewczyk and Marc E. Denison for Respondent.

-ooOoo-

Candice Steed, as administrator of the estate of Sharron Steed, sought an order determining that she and her siblings were entitled to their deceased mother's interest in their father's retirement benefits, an interest that was established in the judgment of dissolution of the marriage of James and Sharron Steed.  Rejecting James's argument that

Sharron's interest terminated upon her death, the family law court granted Candice's petition and ordered that Sharron's interest be paid to her beneficiaries. James appeals from the order granting Candice's petition and the domestic relations order implementing that decision.[1]

## FACTS AND PROCEDURAL HISTORY

On October 26, 1998, the family law court entered a judgment of dissolution ending the marriage of James and Sharron Steed. The judgment included a provision that "James Steed's retirement/deferred compensation benefits from employment during marriage shall be divided between the parties by the time rule."[2] During their marriage, James had been employed by the California Department of Corrections; his retirement plan was administered through the California Public Employees' Retirement System (CalPERS). James retired in 2007. In 2008, Sharron, acting in propria persona, sought entry of a domestic relations order (DRO) for payment to her of her interest in James's retirement benefits. The orders she submitted to the court were entered but later vacated for failure to serve James. The parties apparently attempted to negotiate the terms of a DRO, but disagreed about whether Sharron could name beneficiaries to receive her community property interest in the retirement benefits upon her death or whether her

---

[1]Because the parties share a last name, we will refer to them by their first names for clarity and convenience. No disrespect is intended.

[2]"The traditional 'time rule' provides that whenever credited time of service is a substantial factor in determining the benefit payable under a defined benefit plan, the extent to which that service was provided during the marriage in comparison to the total duration of service will alone determine the community share. The community share is thus derived per a purely mathematical formula under which time or years of service is the determining factor. [Citations.] According to the time rule, the community interest is that fraction of the retirement benefits, the numerator of which represents the length of service during marriage and the denominator of which represents the total length of service by the employee spouse. [Citation.]" (*In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 508, fn. 3.)

2.

interest would lapse and revert to James at her death. On September 2, 2009, the trial court ordered that Sharron prepare a DRO "'contain[ing] a paragraph that allows [Sharron] to designate a beneficiary for any residual benefits she retains at the time of her death.'"

The parties entered into a stipulated DRO, which named the parties' three children as the beneficiaries of Sharron's interest, and the trial court entered the order on September 21, 2009. Eight days later, Sharron died. In November 2009, CalPERS, which had been made a party to the family court proceeding, filed a motion for modification of the DRO, specifying certain language that needed to be stricken in order for it to implement the DRO. The trial court instead set aside the DRO because it did not meet the requirements of CalPERS.

Candice subsequently became administrator of Sharron's estate. In probate court, she filed a petition seeking an order determining that Sharron held a community property interest in James's pension plan and that she was able to bequeath that interest to her children. The parties stipulated to the relevant facts and exhibits, and the probate court heard the matter. Candice argued that James was collaterally estopped by the September 2, 2009, order from relitigating the determination that Sharron could designate beneficiaries to receive her interest in the retirement benefits after her death. James disagreed, contending that collateral estoppel did not apply because the issue Candice presented after Sharron's death was not the same as the issue before the court while Sharron was alive. The probate court concluded that the family law court had primary jurisdiction over disposition of post-death retirement benefits and ordered that the matter be transferred to family law court for further proceedings on that issue.

The parties briefed the issues again for the family law court, relying on the stipulation of facts and exhibits and the testimony presented in probate court. The family law court granted Candice's petition to determine Sharron's interest in James's retirement benefits and approved the proposed DRO. It concluded that, "any attempt to relitigate the

3.

division of the pension and retirement benefits is barred by collateral estoppel." It entered the DRO, which set out the formula for calculating Sharron's interest in the retirement benefits, named the parties' three children as beneficiaries of any residual benefits Sharron retained at the time of her death, and ordered that "[t]he Estate, and then [Sharron's] beneficiaries … once the Estate is closed," receive Sharron's interest directly from CalPERS. James appeals from the June 21, 2013, findings and order after hearing in which the trial court granted Candice's petition and from the DRO entered on the same date.

## DISCUSSION

### I.    Standard of review

"In dividing the community estate as part of a marital dissolution, the court must generally effect an equal division. [Citation.]" (*In re Marriage of Gray, supra,* 155 Cal.App.4th at p. 514.) In dividing a retirement plan, "when the court concludes that property contains both separate and community interests, the court has very broad discretion to fashion an apportionment of interests that is equitable under the circumstances of the case." (*Ibid*.) On appeal, we will not interfere with the trial court's division of interests unless an abuse of discretion is shown. (*In re Marriage of Cooper* (2008) 160 Cal.App.4th 574, 580.)

The trial court, however, does not have discretion to select a method of apportionment that does not comply with applicable laws. (*In re Marriage of Sonne* (2010) 185 Cal.App.4th 1564, 1577.) Interpretation of the applicable laws and their application to undisputed facts presents a question of law that is subject to de novo review. (*Morgan v. United Retail Inc.* (2010) 186 Cal.App.4th 1136, 1142.) To the extent the parties disagree about the applicable law and its application to the stipulated facts, our review is de novo.

4.

## II. Collateral estoppel

James contends the trial court improperly concluded he was barred by collateral estoppel from relitigating whether the personal representative of Sharron's estate may designate beneficiaries to receive her interest in James's retirement benefits. Collateral estoppel requires that the issue in the current proceeding be identical to that decided in the former proceeding and the decision in the former proceeding be final and on the merits. (*Castillo v. City of Los Angeles* (2001) 92 Cal.App.4th 477, 481.) James contends the issues addressed in the family law court's September 2, 2009, order and those addressed in granting Candice's petition were not identical; the September 2, 2009, order determined that Sharron could designate beneficiaries to receive her interest in James's retirement benefits after her death, and the June 21, 2013, order determined that the personal representative of Sharron's estate could designate such beneficiaries after Sharron died without making her own valid designation. Further, James argues the September 2, 2009, order was not final for purposes of collateral estoppel.

We need not address these issues because an erroneous determination that collateral estoppel applies would not warrant reversal unless it resulted in prejudice to James. Because we determine James would not have been entitled to a more favorable order even without the application of collateral estoppel, James has not demonstrated prejudicial error.

## III. Right to designate beneficiary

James contends benefits under the Public Employees Retirement Law are not assignable, pursuant to Government Code section 21255. He acknowledges there is an exception when an award of a portion of a member spouse's retirement benefits is made to the nonmember spouse as part of a dissolution judgment, but asserts such an award can be made only pursuant to Government Code section 21290, which requires that separate retirement accounts be set up for each spouse. When separate accounts are set up, the nonmember spouse's application to CalPERS for retirement benefits must be received by

5.

CalPERS during that spouse's lifetime (Gov. Code, § 21296).  If it is not, he argues, the nonmember's right to those benefits is lost.  James concludes there is no other method by which the nonmember may obtain benefits or pass them on to a beneficiary.  Because separate accounts were not set up for James and Sharron, and Sharron did not make an application for benefits or a valid designation of beneficiaries during her lifetime, James contends Sharron lost her interest in his retirement benefits, and those benefits could not be passed on to her beneficiaries, but reverted to him.  We conclude that James's analysis is flawed.

### A.        *Inapplicability of nonassignment statute*

Under the Public Employees Retirement Law, "[t]he right of a person to any benefit or other right under this part and the money in the retirement fund are not subject to execution or any process whatsoever …, and are unassignable, except as specifically provided in this part." (Gov. Code, § 21255.)  James contends an award to the nonmember spouse of an interest in the member spouse's CalPERS retirement account is a prohibited assignment, unless it is accomplished by establishing separate accounts for the member and nonmember pursuant to Government Code section 21290.  Case law is to the contrary.

A provision in a judgment of dissolution awarding the nonemployee spouse his or her community property interest in the employee spouse's retirement benefits does not violate the prohibition against assignment of retirement benefits.  (*Phillipson v. Board of Administration* (1970) 3 Cal.3d 32, 38, overruled on other grounds in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [construing former Gov. Code, § 21201, predecessor of current Gov. Code, § 21255].)  The anti-assignment provision bars creditors who seek to levy on the retirement funds; an award to the nonemployee spouse of an interest in the employee spouse's retirement benefits "vindicates a different and distinguishable right:  the right of ownership in the funds." (*Phillipson, supra*, at p. 43.)  The nonemployee spouse "claim[ed] not as a creditor, but as an owner with a 'present,

6.

existing, and equal interest.' [Citation.]" (*Id*. at p. 44.) Even if the trial court awards the employee spouse's retirement benefits entirely to the nonemployee spouse, "the award … is not the kind of transfer or conveyance of a property interest contemplated by section [21255's] prohibition against assignment." (*Id*. at p. 47.) The judgment divides the retirement benefits between the owners; it does not make a prohibited assignment of benefits.

### B.     *Alternatives to separate accounts*

With certain exceptions, "in a proceeding for dissolution of marriage or for legal separation of the parties, the court shall, either in its judgment of dissolution of the marriage, … or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally." (Fam. Code, § 2550.) Prior to 1987, courts applied a "terminable interest rule" to a spouse's interest in the other spouse's retirement benefits after dissolution.

> "'Briefly stated, this judicially created rule recognize[d] that an interest in a retirement plan traceable to contributions of community funds or to community labor constitutes community property; however, the interest of the nonparticipant spouse does not extend to benefits payable after the death of either spouse.' [Citation.] There were two distinct aspects to the rule. '"[T]he first aspect … postulates that the community interest in accrued benefits does not extend to pension benefits payable following the death of the employee spouse. Thus, the nonemployee spouse may not claim pension benefits earned or accrued during marriage if the employee spouse designates a third party to receive them after his death.… [¶] A second aspect of the Terminable Interest Doctrine postulates that the nonemployee spouse's interest in pension benefits terminates upon the death of the nonemployee spouse, so that the nonemployee spouse may not bequeath these benefits by will.…" [Citation.]' [Citations.] With respect to this second aspect of the rule, it should be noted that community property interests are ordinarily inheritable. [Citations.]" (*In re Marriage of Powers* (1990) 218 Cal.App.3d 626, 635 (*Powers*).)

Recognizing the inequity of the terminable interest rule, in 1987 the Legislature enacted former Civil Code section 4800.8, the predecessor of current Family Code

section 2610, which empowered the court in a dissolution proceeding "to make 'whatever orders are necessary or appropriate to assure that each party receives his or her full community property share in any retirement plan, whether public or private, including all survivor and death benefits .…'" [Citation.]" (*Powers, supra*, 218 Cal.App.3d at pp. 635, 639; *Regents of University of California v. Benford* (2005) 128 Cal.App.4th 867, 873-874 (*Benford*).) The Legislature expressed its intent to abolish the terminable interest rule so that retirement benefits could be divided equally, in accordance with former Civil Code section 4800. (*Benford, supra,* at p. 874.) Former Civil Code section 4800, like current Family Code section 2550, required that the judgment of dissolution or a subsequent property division order divide the community estate of the parties equally. (*Benford, supra,* at p. 874.) The Legislature abolished the entire terminable interest rule, including the aspect of it that deprived the nonemployee spouse of the ability to bequeath by will his or her community property interest in the employee spouse's retirement benefits. (*Powers, supra,* at p. 641.) Thus, since the enactment of former Civil Code section 4800.8, after the judgment of dissolution or DRO divides the retirement benefits, "if the nonemployee spouse dies before the employee spouse, his or her interest in the employee spouse's pension plan does not revert to the employee spouse by operation of the terminable interest rule but becomes part of the nonemployee spouse's estate." (*Powers, supra,* at p. 639; *Benford, supra,* at p. 875.)

Effective in 1992, former Civil Code section 4800.8 was repealed and replaced with Family Code section 2610, which contains similar provisions:

> "(a) Except as provided in subdivision (b), the court shall make whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits, including, but not limited to, any of the following:

> "(1) Order the disposition of any retirement benefits payable upon or after the death of either party in a manner consistent with Section 2550.

8.

"(2) Order a party to elect a survivor benefit annuity or other similar election for the benefit of the other party, as specified by the court, in any case in which a retirement plan provides for such an election, provided that no court shall order a retirement plan to provide increased benefits determined on the basis of actuarial value.

"(3) Upon the agreement of the nonemployee spouse, order the division of accumulated community property contributions and service credit as provided in the following or similar enactments:

"(A) Article 2 (commencing with Section 21290) of Chapter 9 of Part 3 of Division 5 of Title 2 of the Government Code.  [¶] … [¶]

"(4) Order a retirement plan to make payments directly to a nonmember party of his or her community property interest in retirement benefits." (Fam. Code, § 2610, subd. (a).)

Family Code section 2610, subdivision (a), continues the provision abolishing the terminable interest rule and requiring that each party receive his or her full community property share in any retirement plan.  It identifies four types of orders the court may include in the judgment to divide the retirement benefits.  One alternative allows the court, "[u]pon the agreement of the nonemployee spouse," to order division of retirement benefits pursuant to Government Code sections 21290 through 21298, which are provisions of the Public Employees Retirement Law.  (Fam. Code, § 2610, subd. (a)(3); Gov. Code, §§ 20000, 21290-21298.)

Government Code section 21290 provides:  "If the community property is divided in accordance with paragraph (3) of subdivision (a) of Section 2610 of the Family Code, the court shall order that the accumulated contributions and service credit attributable to periods of service during the marriage be divided into two separate and distinct accounts in the name of the member and the nonmember, respectively." (Gov. Code, § 21290, subd. (b).)  If separate accounts are set up, the nonmember spouse has the right to a refund of the accumulated contributions in the nonmember spouse's separate account. (Gov. Code, § 21292, subd. (a).)  Alternatively, the nonmember spouse may retire when

9.

both spouses have reached the minimum retirement age and receive retirement benefits based on the nonmember's separate account. (Gov. Code, §§ 21295-21298.)

Contrary to James's contention, Government Code sections 21290 through 21298 do not provide the only means by which a nonemployee spouse may obtain his or her community property share of the retirement benefits of the employee spouse. In fact, the community interest may be divided pursuant to those sections only "[u]pon the agreement of the nonemployee spouse .…" (Fam. Code, § 2610, subd. (a)(3).) Instead of setting up separate accounts, the family law court may "[o]rder a retirement plan to make payments directly to a nonmember party of his or her community property interest in retirement benefits." (Fam. Code, § 2610, subd. (a)(4).) It may also order an equal division of "any retirement benefits payable upon or after the death of either party .…" (Fam. Code, § 2610, subd. (a)(1).) The court may, in its judgment of dissolution, expressly reserve jurisdiction to make a property division later. (Fam. Code, § 2550.) It may not postpone the division of retirement benefits indefinitely, but may order division in the judgment of dissolution and reserve jurisdiction to supervise payments at a later date. (*In re Marriage of Colvin* (1992) 2 Cal.App.4th 1570, 1578 (*Colvin*); *In re Marriage of Bergman* (1985) 168 Cal.App.3d 742, 755, 756.)

In accordance with these provisions, the family law court entered a judgment of dissolution of the marriage of James and Sharron that ordered the retirement benefits to be divided by the time rule and reserved jurisdiction to make any orders necessary to carry out the judgment at a later date. The family law court did not enter a judgment dividing the retirement benefits by setting up separate accounts in accordance with Family Code section 2610, subdivision (a)(3), and the restrictions applicable to property division pursuant to that subdivision and Government Code sections 21290 through 21298 did not apply.

Accordingly, James's contention that Sharron was required to, but did not, apply for retirement during her lifetime in compliance with Government Code section 21296 is

10.

without merit. Under Government Code section 21290, subdivision (b), if the community interest in the retirement benefits is divided pursuant to Family Code section 2610, subdivision (a)(3), "the court shall order that the accumulated contributions and service credit attributable to periods of service during the marriage be divided into two separate and distinct accounts in the name of the member and the nonmember, respectively." (Gov. Code, § 21290, subd. (b).) "Nonmember" is defined as the spouse or former spouse of a member who, as a result of petitioning the court for the division of community property, has been awarded such a separate account. (Gov. Code, § 21291.) The nonmember may obtain a refund of amounts in his or her separate account. (Gov. Code, § 21292.) Alternatively, the nonmember may leave the account intact until both the member and the nonmember have reached the minimum retirement age and may then retire. (Gov. Code, § 21295.) Government Code section 21296 specifies when the nonmember's retirement takes effect and provides that "[a]n application for retirement may only be filed by or for a nonmember who is living on the date the application is actually received by this system."

Thus, these provisions apply only to a nonmember, that is, a spouse or former spouse who, in the judgment of dissolution or DRO, has obtained a separate retirement account pursuant to Family Code section 2610, subdivision (a)(3). Government Code section 21296 applies to a nonmember's application for retirement and requires that the application be received by CalPERS while the nonmember is living. Because a nonmember spouse with a separate account may retire at a different time than the member spouse, a separate application to retire is required. (See Gov. Code, §§ 21295, 21296.) When the family law court does not divide retirement benefits by creating separate accounts for the spouses, the nonemployee spouse generally receives benefits when the employee spouse retires. The nonemployee spouse does not separately retire, so no separate application for retirement is required. Thus, the provision of Government Code section 21296 requiring the nonmember spouse to submit an application for

11.

retirement during his or her lifetime does not apply to Sharron, who obtained a judgment of dissolution dividing the retirement benefits by the time rule and did not obtain a division of the retirement benefits by creation of separate accounts for James and Sharron.

This interpretation of the statutes applicable to CalPERS retirement benefits is consistent with case law and the interpretation by CalPERS of the statutory requirements as expressed in its model language for DROs.[3] *Colvin, supra,* 2 Cal.App.4th 1570, involved division of a pension under the Judges' Retirement Law (JRL), which contains provisions similar to the relevant provisions of the Public Employees Retirement Law. The order for division of the husband's retirement plan, entered in 1979, awarded the wife one-half of the community interest in the plan and reserved the trial court's jurisdiction to determine the amount of the community interest at the time of the husband's retirement. (*Colvin, supra,* at p. 1575.) When the husband announced his intent to retire in early 1990, he sought a redetermination of the parties' interests in the retirement benefits. (*Id.* at pp. 1575-1576.) The court noted that Civil Code section 4800.8 permitted the court to divide community interests in CalPERS accounts into separate accounts for the member and nonmember; in 1989, the Legislature had added similar provisions to the JRL. (*Colvin, supra,* at pp. 1576-1577.) The husband contended that, under the 1989 amendments to the JRL, the trial court had only one choice for dividing the pension: to establish separate accounts for the spouses. The court disagreed.

---

[3]In his reply brief, James challenges admission of the testimony of a CalPERS employee who explained her understanding of CalPERS policies and practices. We make no determination regarding the admissibility of that evidence, both because the issue was not raised in James's opening brief (*Supervalu, Inc. v. Wexford Underwriting Managers, Inc.* (2009) 175 Cal.App.4th 64, 84, fn. 5) and because the determination is unnecessary to our decision in this case. We reach our result without consideration of her testimony.

The 1979 order had already divided the retirement benefits, retaining limited authority to modify the precise percentage of the community interest depending on the husband's retirement date, and to oversee allocation of payments. (*Colvin, supra*, 2 Cal.App.4th at p. 1578.) The court concluded the husband could not relitigate the division of retirement benefits to the wife's detriment. Further, it was the wife who had the choice of establishing her own separate account.

> "It is clear from the amendments themselves that it is the spouse or former spouse, not the judge or retired judge, who must petition the court for a separation of accounts. Government Code section 75051 defines 'nonmember' as the member's spouse or former spouse 'who *as a result of petitioning the court for the division of community property*, has been awarded a distinct and separate account reflecting specific credited service and accumulated contributions.' (Italics added.) The obvious import of this language is that it is the spouse's or former spouse's choice whether or not to seek a separation of accounts and the attendant rights flowing therefrom. This makes sense because there are advantages and disadvantages to proceeding with this method which the nonmember would have to evaluate. On the one hand, with a separation of accounts the nonemployee spouse does not have to rely on the member for the type of benefit or timing of its payment. On the other hand, the nonemployee spouse will not share in the increased value of the member's account because the salary and benefit structure are 'frozen' at the time of separation." (*Colvin, supra*, 2 Cal.App.4th at p. 1579.)

The court also determined that the provision in the JRL for dividing retirement benefits into separate accounts was discretionary; it did not represent the trial court's only option for dividing those benefits. (*Colvin, supra*, 2 Cal.App.4th at p. 1580.) The court observed that Civil Code "section 4800.8 sets forth by way of illustration four methods of dividing retirement benefits. Beyond these four, the court still has power to choose another method so long as it would result in an equitable division of the asset." (*Colvin, supra,* at p. 1580.) Further, "Government Code section 75050 [similar to Government Code section 21290] provides a mechanism for segregating contributions and credits into separate accounts *if* the court so orders pursuant to section 4800.8, subdivision (c). The

13.

very wording of this statute implies that some former spouses will seek their own account and retirement allowance or lump sum payment under the JRL amendments, while others will seek another type of division." (*Ibid.*) Additionally, the *Colvin* court's interpretation was consistent with that of CalPERS, the administrator of husband's retirement plan; the position of CalPERS, presented by declaration, was that Civil Code section 4800.8, subdivision (c), was "but 'one of the several alternative methods of dividing the community property interest in a Judges' Retirement Account which may be ordered by the court.'" (*Colvin, supra,* at p. 1581.)

CalPERS[4] provides three model DROs for its members, "designed to allocate and award a portion of a member's retirement benefits to a nonmember spouse," with instructions for their use. The instructions explain that the model orders conform to the provisions of the Public Employees Retirement Law, but should only be used as a guide; the parties may agree to, or the court may order, different language, as long as it is consistent with applicable law. Model Orders A and B apply only to members who have not yet retired. Order A is made pursuant to Family Code section 2610, subdivision (c), and Government Code sections 21290 through 21298, and divides the community property interest in the member's retirement benefits by separating the service credit and member contributions accrued during marriage into two separate and distinct accounts, for the member and the nonmember.

Order B "provides for the nonmember spouse to receive his or her community property interest at the time benefits become payable to the member." Paragraph 6 of Order B "[i]llustrates how the nonmember spouse's share of the member's retirement benefits may be calculated," and sets out the formula for the time rule. Paragraph 10 of

_____

[4]"Courts generally respect administrative interpretations of a law and, unless clearly erroneous, consider them significant in ascertaining statutory meaning and purpose." (*Colvin, supra*, 2 Cal.App.4th at p. 1581.)

14.

Order B "[i]llustrates how the parties may provide for the nonmember spouse's 'System Interest' to be paid to a beneficiary if the nonmember spouse should die prior to the member."

Order C applies only to retired members. Paragraph 6 of Order C states the amount of the monthly benefit being paid to the member. Paragraph 7 sets out the calculation of the nonmember's share of the member's retirement benefits, using the time rule as its example. Paragraph 10 of Order C "[i]llustrates how the parties may provide for the nonmember spouse's System Interest to be paid to a beneficiary if the nonmember spouse should die **and** benefits are still payable to the member." The instructions for Orders B and C state that, "[i]f the parties desire to have the nonmember spouse's interest revert back to the member after the nonmember spouse's death, instead of continuing to the nonmember spouse's beneficiary for the life of the member, paragraph 10 will need to be changed to provide for this provision."

Thus, case law and the CalPERS model orders are consistent with our conclusion that division of the parties' interests in the retirement benefits into separate accounts is not the only way the court may divide the employee spouse's retirement benefits on dissolution. The trial court has the option of entering a judgment or DRO ordering that the community property interest in the retirement benefits be divided equally and retaining jurisdiction to calculate the parties' respective interests and oversee payment when the employee spouse retires. Case law and the CalPERS model orders also recognize that the nonemployee spouse's interest in the employee's retirement benefits does not terminate or revert to the employee upon the nonemployee's death, but may be disposed of by designation of a beneficiary in the judgment or DRO, or by will or intestate succession.

To the extent James contends the anti-assignment provision of Government Code section 21255 precludes passing Sharron's interest in James's retirement benefits to her heirs or beneficiaries, we disagree. If the anti-assignment provision were interpreted to

15.

prevent a nonemployee spouse from passing to his or her heirs or beneficiaries the interest in the retirement benefits the nonemployee spouse was awarded in the judgment of dissolution, that interpretation would nullify the Legislature's abrogation of the terminable interest rule. It would make the nonemployee spouse's interest in the retirement benefits terminable upon his or her death. Where statutes affecting the same matter appear to conflict, we must harmonize them, if possible. (*In re Marriage of Carnall* (1989) 216 Cal.App.3d 1010, 1021-1022.) We conclude that passing a nonemployee spouse's interest in the employee spouse's retirement, an interest that was awarded to the nonemployee spouse as her separate property in the judgment of dissolution, to the heirs or beneficiaries of the nonemployee spouse upon the death of that spouse, is not the type of assignment barred by Government Code section 21255.

James relies on *Benford* as support for his argument that an interest in retirement benefits cannot be assigned except through a DRO, and in the absence of entry of a valid DRO during the nonemployee spouse's lifetime, that spouse cannot bequeath his or her interest in the retirement benefits. (*Benford, supra*, 128 Cal.App.4th 867.) *Benford*, however, is distinguishable because no judgment of dissolution or DRO was ever entered so no division of the retirement benefits was made in the dissolution proceeding. In *Benford*, although a dissolution proceeding had been initiated to dissolve the marriage of the husband and wife, no DRO or judgment of legal separation or dissolution dividing the parties' interests in the husband's University of California pension plan had been entered prior to the death of the wife. Through testamentary instruments, the wife had attempted to bequeath her community property interest in the husband's pension benefits to a trust she created, of which the parties' children were the beneficiaries. The court concluded anti-alienation provisions in the pension plan prohibited a nonemployee spouse who predeceased the employee spouse from bequeathing his or her community property interest in the retirement plan. (*Id.* at pp. 870-871.)

The *Benford* court concluded Family Code section 2610, which abrogated the terminable interest rule and required equal division of retirement benefits, including those payable after the death of either spouse, pertained only to division of community property in a marital dissolution or legal separation proceeding.  (*Benford, supra*, 128 Cal.App.4th at pp. 873, 874.)  Because no order or judgment dividing the property had been entered in the dissolution proceeding, and the occasion for determining disposition of the property was the death of one spouse, Family Code section 2610 did not apply.  (*Benford, supra,* at p. 874.)  Thus, *Benford* supplies no support for James's argument that Sharron, who obtained a judgment of dissolution awarding her an interest in James's retirement benefits calculated by the time rule, lost her ability to bequeath that interest to her children because a DRO containing the actual calculation of her share of the benefits was not entered during her lifetime.

Here, the trial court entered a judgment of dissolution, dividing the community property interest in James's retirement benefits.  Thus, unlike *Benford*, in this case Family Code section 2610 applied and required equal division of the community property interest in the retirement benefits, including those payable on or after the death of either spouse.

### C.    *Prejudicial error*

James contends the personal representative of Sharron's estate could not designate beneficiaries for her interest in James's retirement benefits after Sharron's death.  He asserts the designation of beneficiaries could only be made by Sharron during her lifetime.  The family law court, however, retained jurisdiction to make orders necessary to carry out the judgment.  "When the family court expressly reserves jurisdiction over collateral issues such as property rights, … after rendering judgment dissolving a marriage, the death of a spouse does not abate the action or remove the family court's jurisdiction to resolve these issues.  [Citations.]  In such cases, 'the proper procedure is to substitute the personal representative of the deceased spouse's estate (or, if none, the

17.

spouse's successor in interest) as a party to the *still-pending* action [citation], whereupon the reserved issues are properly decided under the Family Code.' [Citation.]" (*In re Marriage of Drake* (1997) 53 Cal.App.4th 1139, 1151.) After Sharron's death, the family law court permitted Candice to appear as the personal representative of Sharron's estate and entered a DRO that implemented the provision in the judgment of dissolution that divided the retirement benefits. The June 21, 2013, DRO designated the same beneficiaries Sharron had repeatedly attempted to designate in her proposed DROs.

Even if we were to conclude it was error to permit Sharron's personal representative to designate beneficiaries on her behalf after her death, James has not demonstrated that the alleged error was prejudicial. "A judgment may not be reversed on appeal … unless 'after an examination of the entire cause, including the evidence,' it appears the error caused a 'miscarriage of justice.' [Citation.] When the error is one of state law only, it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached." (*Soule v. General Motors Corp*. (1994) 8 Cal.4th 548, 574.) The burden is on the appellant to show the claimed error resulted in a miscarriage of justice. (*In re Marriage of McLaughlin* (2000) 82 Cal.App.4th 327, 337.)

James has not shown that, if the trial court had not permitted Sharron's personal representative to designate beneficiaries on her behalf, the result would have been an order more favorable to him. In the absence of a designation of beneficiaries of Sharron's remaining interest in James's retirement benefits, Sharron's interest would have passed through her estate for distribution. James has made no showing that the distribution of those benefits would have been different if they had passed through Sharron's estate. Further, the order designating beneficiaries would have been prejudicial to James only if some or all of Sharron's interest in the retirement benefits would have passed to James in the absence of that order. James has not shown that any of Sharron's

interest would have passed to him by will or intestate succession in the absence of the designation of beneficiaries. Consequently, no prejudicial error has been demonstrated.

## *DISPOSITION*

The orders are affirmed. Candice is entitled to her costs on appeal.

_____

Chittick, J.[*]

WE CONCUR:

_____

Poochigian, Acting P.J.


_____

Peña, J.

---

[*]Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.